Graffty v. The City of Rushville.

No. 12,741.

GRAFFTY v. THE CITY OF RUSHVILLE.

CITY.—*Hawkers and Peddlers.*—*Power to Restrain.*—Under subdivision 23 of section 3106, R. S. 1881, which empowers cities incorporated under the general law " to restrain hawking and peddling," any mode of selling goods which does not fall within these terms can not be made unlawful by ordinance.

SAME.—*Definition of Hawking and Peddling.*—Any method of selling goods by outcry on the streets or public places in a city, or by attracting persons to purchase goods exposed for sale at such places by placards or signals, or by going from house to house selling or offering goods for sale at retail to individuals not dealers in such commodities, whether they be carried along for present delivery, or the sales be made for future delivery, constitutes the person so selling a hawker or peddler within the meaning of the statute.

SAME.—*Constitutional Law.*—*Ordinance.*—*Discrimination Against Citizens and Products of Other Communities.*—A city ordinance, requiring a hawker or peddler, who is not a resident of the city, and who proposes to sell goods, wares or merchandise which are not grown or manufactured in the county in which such city is situated, to procure a license and pay a fee therefor before he may lawfully follow his calling in such city, discriminates against the citizens and products of other communities, and is unconstitutional and void.

From the Rush Circuit Court.

*J. Q. Thomas, J. J. Spann* and *C. A. Dryer*, for appellant.
*G. H. Puntenney* and *A. B. Irvin*, for appellee.

MITCHELL, J.—Subdivision 23 of section 3106, R. S. 1881, empowers cities incorporated under the general law of the State of Indiana, " To regulate the ringing of bells and crying of goods, and to restrain hawking and peddling." Assuming to act under the authority thus conferred, the common council of the city of Rushville, on the 10th day of September, 1883, passed an ordinance of the tenor following: " That every person who peddles, hawks, sells, or exhibits for sale, any goods, wares or merchandise, not the growth or manufacture of Rush county, Indiana, or shall take orders for any such goods, wares or merchandise, for immediate or future delivery, about the streets, alleys, hotels, business

houses, private dwellings, or at any public or private place in said city, without having paid the marshal from two to six dollars for each day, six to ten dollars for each week, and ten to twenty dollars for each month, at the discretion of the marshal, such person may desire to follow such business within said city, and receiving a permit therefor from the mayor of said city, shall, upon conviction thereof, be fined, forfeit and pay to said city a sum not exceeding ten dollars for each day such person shall continue such business without receiving a permit as in this section set forth: *Provided*, That nothing in this section shall be construed to apply to any citizen of said city, or any commercial travellers, known as drummers, runners or agents, travelling for any wholesale house selling to dealers."

James F. Graffty was found guilty of a violation of the foregoing ordinance, upon the complaint of the city of Rushville, which charged him with having, on the 4th day of September, 1885, unlawfully "taken orders from a citizen of said city, whose name is unknown, for shirts, socks and men's furnishing goods, for future delivery, about the streets, alleys and business houses within said city, the said shirts, socks and men's furnishing goods, not being the manufacture of Rush county, Indiana, * * * and the said James F. Graffty not being then and there a resident of said city."

The evidence fairly tends to show that Graffty resided in Indianapolis, and was in the employ of Paul H. Krauss, a manufacturer of and dealer in shirts, underwear, and gentlemen's furnishing goods, residing and having his business house in the city of Indianapolis.

The evidence reasonably tends to show that Graffty's manner of business was to carry samples of the different articles manufactured or sold by his employer, and exhibit them from house to house, or from one business place to the other, to individuals not dealers, soliciting orders from each individual for such articles and in such quantities as the individual might require or purchase. The goods thus ordered were to be de-

livered at a future day by express or otherwise. Graffty delivered no goods, nor did he carry with him any goods except the samples.

The consideration of two questions is involved in the discussion upon the errors assigned:

1. Was the business of the appellant, conducted in the manner described, within the prohibition of an ordinance, such as might lawfully have been enacted, under the statute giving cities the power to restrain hawking and peddling?

2. Was the ordinance in question, which required license only in case the goods, wares and merchandise, hawked or peddled, were not the growth or manufacture of Rush county, and only in case the hawker or peddler was not a resident of the city of Rushville, a valid exercise of power?

Pertinent to the first proposition, it may be said, the effect of the ordinance under consideration can not be enlarged, nor its operation rendered more comprehensive, by the attempt to bring within its terms persons who sell, or exhibit for sale, or those who take orders for, goods, wares and merchandise for future delivery, unless such sales or exhibitions are made in such manner as to constitute the persons who make them hawkers or peddlers. The extent of the power conferred upon cities by the statute, in this connection, is to restrain hawking and peddling, and any mode of selling goods, which does not legitimately fall within these terms, can not be made unlawful by being specifically described and restrained in the ordinance. Such sales and exhibitions of wares, and such orders for the future delivery of goods, and such only as are embraced by the terms "hawking and peddling," may be restrained by ordinances duly passed, under the power conferred by the statute above set out.

It becomes important, therefore, to inquire what constitutes a hawker or peddler.

In the case of *Commonwealth* v. *Ober*, 12 Cush. 493, SHAW, C. J., said: "The leading primary idea of a hawker and peddler is, that of an itinerant or travelling trader, who car-

ries goods about, in order to sell them, and who actually sells them to purchasers, in contradistinction to a trader who has goods for sale and sells them in a fixed place of business."

The term " hawking " also embraces the business of one who sells, or offers goods for sale, on the streets by outcry, or by attracting the attention of persons by exposing his goods in a public place, or by placards, labels or signals.

Webster defines peddling as travelling about and selling small wares, and hawking as offering for sale in the streets by outcry. Another definition runs thus: "A peddler, petty chapman, or other trading person going from town to town or to other men's houses, and travelling either on foot, or with horse or horses, or otherwise carrying to sell, or exposing to sale, any goods, wares, or merchandise." Rapalje and Lawrence Law Dict., Tit. " Hawker."

In Jacob's Law Dictionary, a definition, indicative of the disfavor in which the common law held the vocation, is as follows: "*Hawkers.* Those deceitful fellows who went from place to place, buying and selling brass, pewter and other goods and merchandise, which ought to be uttered in open market, were of old so called; and the appellation seems to grow from their uncertain wandering, like persons that with *hawks* seize their game where they can find it. * * Hawkers and peddlers, etc., going from town to town or house to house are now to pay a fine and duty to the King."

The purpose of the statute, in empowering cities to pass ordinances in restraint of hawking and peddling, was doubtless two-fold:

One end to be attained was the protection and encouragement of local traders and merchants, who are largely dependent for their patronage on their reputation for integrity and fair dealing, and their social and moral standing in the community; and who by investing their means in providing fixed places of trade, and paying taxes on their merchandise, help to build up and maintain the city in which they reside, and

contribute to the support of its schools and other local interests and enterprises.

The other was to prevent the indiscriminate invasion of the houses and places of business of citizens, and shield them from the practices of itinerant traders of unknown repute, who are frequently patronized by persons, in order to be rid of their importunities and presence.

If the itinerant trader may avoid an ordinance enacted to subserve the ends which we have supposed, by going from house to house, making sales, merely exhibiting samples of his wares, leaving another to follow to deliver the goods, or making the delivery by any other method, all the evils which were intended to be guarded against remain ; while none of the protection contemplated is afforded.

The thing to be restrained is the putting of goods, the owners of which may or may not have contributed by way of taxation to the benefit of the municipality, in competition with the goods of the local merchant, every dollar's worth of whose stock has been subjected to municipal taxation, and who has contributed to the social, educational, and financial prosperity of the city.    The travelling trader, who uses the street or public grounds as his place of business, or who goes unbidden from house to house into private residences to ply his trade, is not a fair competitor for the other who builds or rents a costly and commodious structure wherein to serve his customers.

The police power of the city may, therefore, be properly exerted to restrain all such as by their methods of doing business are liable to invade social order, by seeking purchasers for their wares in the homes of citizens, or in the streets and public places of a city, to the discouragement of the more legitimate methods of others on whom the municipality is dependent for its support.

Any method of selling goods, wares or merchandise by outcry on the streets, or public places in a city, or by attracting persons to purchase goods exposed for sale at such

places, by placards or signals, or by going from house to house, selling or offering goods for sale at retail, to individuals not dealers in such commodities, whether the goods be carried along for delivery presently, or whether the sales are made for future delivery, constitutes the person so selling a hawker or peddler within the meaning of the statute. In this way we are brought to the conclusion that the appellant's method of conducting business was within the prohibition against hawking or peddling, without being duly licensed. *Allen* v. *Sparkhall*, 1 B. & Ald. 100; *King* v. *Turner*, 4 B. & Ald. 510; *Gregg* v. *Smith*, L. R. 8 Q. B. 302; *Howard* v. *Lupton*, L. R. 10 Q. B. 598; *Morrill* v. *State*, 38 Wis. 428 (20 Am. R. 12).

The next question might require more consideration but for the decisions, in analogous cases, of the Supreme Court of the United States, whose judgments are of binding authority on us upon all like questions.

As will have been observed, the hawking or peddling of goods by residents of the city of Rushville, or the sale of goods by any one without regard to residence, provided such goods have been manufactured or produced in Rush county, are not subject to the restrictive provisions of the ordinance. It only requires that the ordinance be read, to discover that the purpose of its authors was to secure to the citizens of Rushville special privileges and immunities exempt from cost, which could be enjoyed by non-residents only upon condition that they should submit to burdensome exactions, to be imposed in each case largely at the discretion of the city marshal. So in respect to goods or merchandise manufactured or produced in Rush county. Whoever was so minded might cry these in the street, or hawk them from door to door without restriction; while the venders of the products and manufactures of other counties or States, before selling in like manner, must submit to the requirements of the ordinance, under pain of prescribed penalties, in case of sales without paying the exacted license.

The design of the ordinance seems to be, not so much to protect and encourage merchants and traders, who serve their customers in fixed places of trade, or to discourage the annoyance, if such it be, of making the public streets and private houses places for the sale of wares, as to exclude all others than residents of the city from exercising the calling of peddlers within the city limits, and to subject all goods and merchandise manufactured outside of Rush county, and sold within the city, to a discriminating burden.

Unless, therefore, it can be maintained that a city may deny to the citizens of other cities and communities privileges and immunities which may be enjoyed by its own, and that it may impose burdens on the goods manufactured outside of a given district, which are not imposed on all goods under like circumstances, the ordinance would seem to be void.

Briefly, as to the validity of this ordinance, within the provisions of our State Constitution, section 23, of article 1, Constitution of Indiana, provides as follows:

" The General Assembly shall not grant to any citizen, or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens."

That it would have been beyond the power of the General Assembly to have conferred upon the citizens of the city of Rushville the privilege of vending goods in that city, upon terms less onerous, and not equally open to all the citizens of the State, seems too clear for debate. It is equally clear that it could not have imposed upon the products of other counties, sold within the city of Rushville, burdens different from those imposed upon goods manufactured or grown in Rush county. The General Assembly having no such power, it could not, even if it had attempted so to do—which it has not—confer upon the common council the power to do that which the Constitution prohibits it from doing. It results that the common council of the city of Rushville, which can exert in this respect only delegated power, can not be possessed of power to grant privileges to the

Graffty v. The City of Rushville.

citizens of Rushville, which are not equally and upon the same terms open to all citizens.

The General Assembly, as also common councils of cities, may without doubt prescribe the qualifications in respect to residence, age, moral character, etc., of those who may exercise vocations which are proper subjects of police regulations, but it can not grant privileges and immunities to one citizen, or class of citizens, which are not obtainable upon the same terms by all others.

Independently of the considerations mentioned, the ordinance in question is incapable of being enforced by reason of its plain repugnance to those provisions of the National Constitution, which commit to Congress the exclusive power to regulate commerce among the several States, and provide that the citizens of each State shall be entitled to all the privileges and immunities of citizens in the several States. Upon these subjects the decisions of the Supreme Court are uniform and authoritative.

Whatever the extent to which States or municipalities may go in the exercise of police regulations, or in the imposition of occupation taxes, they can not, in respect to either subject, legislate in such manner as to control the inhibitions of the Federal Constitution. *Walling* v. *Michigan*, 116 U. S. 446.

The State of Missouri prescribed by statute that the sale of goods, wares and merchandise, not the produce or manufacture of that State, by any person going from place to place, should constitute the person so selling a peddler, and required of such persons a license; while to sell in like manner such goods as were grown or manufactured in the State, no license was required. The validity of this enactment having come before the Supreme Court of the United States, it was held in *Welton* v. *Missouri*, 91 U. S. 275, to be discriminating legislation of such a character as to be within the constitutional inhibition.

A like ruling was made upon a similar statute, passed by

the State of Maryland, in the case of *Ward* v. *Maryland*, 12 Wall. 418.

The same question was elaborately considered by Mr. Justice HARLAN, in *Guy* v. *Baltimore*, 100 U. S. 434. In the case last cited an ordinance, adopted by the mayor and common council of the city of Baltimore, imposed certain wharfage burdens upon goods, wares and merchandise other than the products of the State of Maryland. While holding that the city had the power to exact reasonable wharfage fees, equally from all who used its wharves, the power to build up its domestic commerce by means of unequal burdens upon the business and industry of other States was denied.

Construing a statute of similar import, the Supreme Court of Maine said: "It allows goods manufactured in this State to be peddled free, and exacts a license fee from those who peddle similar goods which are manufactured out of the State. Such a discrimination in favor of goods manufactured in this State, and against goods manufactured in other States, violates the Federal Constitution." *State* v. *Furbush*, 72 Maine, 493. See, also, the following authorities which are to the like effect: *Webber* v. *Virginia*, 103 U. S. 344; *Brown* v. *Houston*, 114 U. S. 622, 631, and cases cited; *City of Marshalltown* v. *Blum*, 58 Iowa, 184 (43 Am. R. 116); *Ex Parte Frank*, 52 Cal. 606 (28 Am. R. 642); 2 Dillon Munic. Corp., sections 743, 744, and notes.

In support of the validity of the ordinance, and to sustain the ruling of the court below, counsel for the city rely upon *Sears* v. *Board, etc.*, 36 Ind. 267, and *City of Huntington* v. *Cheesbro*, 57 Ind. 74. The case last cited decides nothing more than that cities have the power to pass ordinances in restraint of hawking and peddling. The ordinance there under consideration involved no question of discrimination against persons or property. No doubt can be entertained but that such ordinances are valid. The other case relied upon arose out of a consideration of so much of section 5269, R. S. 1881, as requires travelling merchants and peddlers who

are not residents of this State, and who vend foreign merchandise, to obtain license as therein prescribed. The opinion in that case seems to depend largely for support upon *Woodruff* v. *Parham*, 8 Wall. 123, and the decisions of the Supreme Court of the State of Maryland, in *Ward* v. *Maryland*, 9 Am. Law Reg. (N. S.) 424.

Concerning the last mentioned case, in which the Supreme Court of the State of Maryland sustained the validity of a statute similar to that involved in *Sears* v. *Board, etc., supra,* it is sufficient to say, the judgment of the State court was reversed on appeal by the Supreme Court of the United States in *Ward* v. *Maryland, supra.*

To indicate the extent to which the case of *Woodruff* v. *Parham, supra,* is applicable to the question under consideration here, it is only necessary to quote from the opinion of Mr. Justice MILLER the following paragraph : " The case before us is a simple tax on sales of merchandise, imposed alike upon all sales made in Mobile, whether the sales be made by a citizen of Alabama or of another State, and whether the goods sold are the produce of that State or some other. There is no attempt to discriminate injuriously against the products of other States or the rights of their citizens, and the case is not, therefore, an attempt to fetter commerce among the States, or to deprive the citizens of other States of any privilege or immunity possessed by citizens of Alabama. But a law having such operation would, in our opinion, be an infringement of the provisions of the constitution which relate to those subjects, and therefore void."

Whatever incidental application the case of *Sears* v. *Board, etc., supra,* may have to the question before us—and we concede that it has some—and without further remark as to the propriety of the conclusion there reached, we can not, with the later authoritative judgments of the highest judicial tribunal of the land before us, allow it to control our judgment in this case.

The conclusion plainly deducible from the decisions is, that

neither States nor municipalities can enforce any law or ordinance, the effect of which is to embarrass commercial communication between the different States, or to discriminate against the products of one State, or exact licenses from persons residing in foreign States which are not required of its own citizens under like circumstances. *Western Union Tel. Co.* v. *Pendleton*, 95 Ind. 12 (48 Am. R. 692), and cases cited; *Higgins* v. *Three Hundred Casks of Lime*, 130 Mass. 1. On the other hand, where by the terms of a law or ordinance regulating the sale of goods by hawkers or peddlers, the privilege is equally open to all upon the same terms, and the license fees imposed for the privilege are the same regardless of the State or district wherein the goods are manufactured or produced, such law or ordinance is a legitimate exercise of power, and will be upheld.

Because the ordinance in question is an infringement of these privileges, it is repugnant to the constitutional provisions above referred to, and is as a consequence void.

The judgment is reversed, with costs.

Filed Oct. 5, 1886.