## FALLIS *v.* CITY OF GAS CITY.

[No. 20,991.   Filed December 17, 1907.]

1. MUNICIPAL CORPORATIONS.—*Powers.—Broadening by Ordinance.* —Municipal corporations have no power to broaden, by ordinance, their legislative grant of power. p. 510.

2. SAME.—*Ordinances.—"Peddlers."—Defining.*—That part of a city ordinance licensing peddling, which defines the term "peddler," may be treated as surplusage, since by §7231p Burns 1901, Acts 1901, p. 560, §7, the legislature defined such word to include a person going from house to house and taking orders for future delivery; and in conferring the power to license to cities, it will be presumed that the word was used in the defined sense. p. 510.

From Grant Circuit Court; *H. J. Paulus*, Judge.

Prosecution by the City of Gas City against Frank T. Fallis. From a judgment of conviction, defendant appeals. *Affirmed.*

*George M. Elliott* and *Grant A. Dentler*, for appellant. *John F. Linn*, for appellee.

HADLEY, J.—What acts constitute a peddler? Among the powers conferred upon cities and towns by legislative grant is the following: "To license, tax, regulate, suppress and prohibit hawkers and itinerant dealers, peddlers and pawnbrokers, and to revoke any such license." Acts 1905, pp.

219, 246, cl. 37, §3477 Burns 1905. Upon the authority of this statute appellee city enacted an ordinance "to license and restrain hawking and peddling within the city limits of the city of Gas City." The first section declares that it shall be unlawful for any person to engage in the business of hawking or peddling within the city limits without first obtaining a license therefor. The second section is as follows: ·

"For the purpose of this ordinance a peddler shall be held to be any person who, by solicitation or outcry, takes anything from house to house in any manner, and offers to sell the same for money, or barters the thing for any other thing, or whoever goes from house to house for the purpose of taking orders for anything for future delivery to be sold or bartered."

Other sections follow, defining hawking, prescribing the license fees, providing for the payment, execution and issuance of licenses, and providing a penalty, not exceeding $25, for a violation of any provision of the ordinance. This action, founded thereon, was brought before the mayor of the city, charging that appellant, on April 24, 1906, within the city limits, did then and there follow the vocation of a peddler, by then and there going from house to house for the purpose of taking orders for teas, coffees and spices, for future delivery, in violation, etc. In the circuit court the defendant demurred to the complaint for insufficiency of facts, which was overruled, and the cause put at issue by the general denial. Trial by the court and finding and judgment against appellant for $5.

Appellant's only contention is that the ordinance is void, because the city council had no authority of law to ordain that the going from house to house for the purpose of taking orders for future delivery of goods shall constitute peddling.

It will be granted, as argued by appellant, that the city council had no authority to broaden or enlarge the meaning

of the word "peddler" beyond that intended by the legislature in the enactment of the statute before quoted; and, so far as the validity and scope of the ordinance is concerned, that part of section two devoted to declaring what acts shall amount to peddling may be treated as supererogation. So if the legislature had been content to rest the statute upon the common and ordinary meaning of the word "peddler," we would then have been required to resort to the usual signification of the word at the time the law was passed to ascertain whether the acts of the defendant brought him within the popular meaning. But we are saved the pains of searching dictionaries and the antecedent usage, by a legislative definition that outweighs the dictum of the lexicographers. By an act of the General Assembly, in force March 12, 1901 (Acts 1901, p. 560, §7, §7231p Burns 1901), it is declared that "for the purpose of this act the word 'peddle' is defined as meaning to sell or offer for sale manufactured goods, wares or merchandise directly to a consumer, either by going from house to house for the purpose of selling and delivering such goods, or for the purpose of taking orders for the future delivery of such goods." The provision quoted is part of an act "defining and regulating peddling," and was doubtless inspired by the argument and conclusion reached by Mitchell, J., in pronouncing the opinion of this court in *Graffty* v. *City of Rushville* (1886), 107 Ind. 502, 57 Am. Rep. 128. In the case referred to, Graffty, having solicited and taken orders from citizens for shirts for future delivery by an Indianapolis manufacturer, was found guilty of a violation of an ordinance in substance the same as the one before us, and which rested upon the statute of 1881, empowering cities "to regulate and to restrain hawking and peddling." In part it was said: "Any method of selling goods, wares or merchandise by outcry on the streets, or public places in a city, or by attracting persons to purchase goods exposed for sale at such

places, by placards or signals, or by going from house to house, selling or offering to sell goods at retail, to individuals not dealers in such commodities, whether the goods be carried along for delivery presently, or whether the sales are made for future delivery, constitutes the person so selling a hawker or peddler within the meaning of the statute. In this way we are brought to the conclusion that the appellant's method of conducting business was within the prohibition against hawking or peddling, without being duly licensed. *Allen* v. *Sparkhall* [1817], 1 B. & Ald. 100; *King* v. *Turner* [1821], 4 B. & Ald. 510; *Gregg* v. *Smith* [1873], L. R. 8 Q. B. 302; *Howard* v. *Lupton* [1875], L. R. 10 Q. B. 598; *Morrill* v. *State* [1875], 38 Wis. 428, 20 Am. Rep. 12.'' The statutory definition of the word ''peddler'' relates specifically to a license granted upon state authority, but it amounts to a legislative declaration of the meaning of the word as applied to the right to regulate and to license the vocation of peddling, and in empowering cities to exercise the right, and to exact a license from ''peddlers,'' it will be presumed that the legislature intended to clothe the word with the signification it had solemnly declared it should have. *Jarvis* v. *Hitch* (1903), 161 Ind. 217. But aside from the statute, we perceive no reason for departing from the doctrine of the case of *Graffty* v. *City of Rushville, supra.* We find no error.

Judgment affirmed.