Argued April 3, affirmed July 6, 1951

# PHILLIPS *v.* CITY OF BEND

234 P. 2d 572

144

*S. J. Bischoff,* of Portland, argued the cause and filed a brief for appellant.

*Ross Farnham,* of Bend, argued the cause and filed a brief for respondents.

BRAND, C. J.

By this suit the plaintiff seeks to enjoin the City of Bend and its officers from enforcing against the plaintiff and his salesmen the provisions of an enactment by the city of the kind generally known as a "Green River ordinance" concerning solicitors, peddlers and others. The trial court sustained a demurrer to the complaint. The plaintiff elected to plead no further and the suit was dismissed. Plaintiff appeals. Omitting the title, the relevant provisions of the ordinance are as follows:

> "Section 1. The practice of persons of going in and upon private property or calling at residences in the City of Bend, Oregon, by solicitors, peddlers,

hawkers, itinerant merchants, transient vendors of merchandise, and transient photograph solicitors, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares, and merchandise and/or for the purpose of disposing of and/or peddling or hawking the same, or soliciting orders for photographs, is hereby prohibited and declared to be a nuisance and punishable as such nuisance as a misdemeanor.

Section 2 imposes upon the police officers the duty of enforcement. Section 3 provides penalties to be imposed upon conviction for violation of the ordinance. Section 4 repeals any conflicting ordinances. Section 5 reads as follows:

"Inasmuch as this ordinance is necessary for the immediate preservation of the public health, peace, and safety of the City of Bend, in this; That the residents and inhabitants of the City of Bend are continuously bothered with agents and peddlers of merchandise; and to eliminate such nuisance it is deemed necessary that an emergency be and the same hereby is declared to exist, and this ordinance shall be in force and effect from and after its passage by the commission and approval by the mayor."

The complaint alleges that the plaintiff is a citizen of the United States and of the State of Oregon and a resident of the City of Bend. It then recites the corporate capacity of the city, the official capacity of the other defendants and the passage of the ordinance. There are further allegations to the effect that the plaintiff is engaged in the business of selling electric vacuum cleaners and appurtenances in the State of Oregon and the cities thereof, including the City of

Bend. Plaintiff makes the sales personally and through salesmen "who purchase such appliances from plaintiff for resale to owners or occupants of private residences in said areas." Plaintiff's appliances are useful and his business lucrative. The plaintiff and the said salesmen sell the said household appliances by calling upon owners and occupants of private residences at their places of residence. Requests are made of the owners or occupants of private residences for permission to display the said equipment and to demonstrate the uses to which it can be put. Demonstrations are made and prospective sales discussed only with the owners after permission is requested and granted. The operation is carried on courteously. In the event of a purchase "delivery is made at said time and place of demonstration or an order is taken for delivery of such equipment and delivery is made thereafter." Plaintiff alleges:

"* * * that the appliance is of such nature and character that it can only be efficiently demonstrated and its usefulness as a time and labor-saving device and as an aid to the owners or occupants of private residences shown by making personal demonstrations thereof in the household by engaging in the actual activity of utilizing the said equipment in the cleaning of carpets, furniture, curtains, clothing and other uses to which the appliance can be put."

The complaint alleges that the ordinance is null and void for the reasons set forth and if the ordinance is enforced against the plaintiff he will be deprived of property without due process of law. Plaintiff's further conclusions are that the ordinance has no relation to the health, peace or safety of the residents and inhabitants of the city; that it is "arbitrary and

capricious insofar as it prohibits the plaintiff from carrying on the aforesaid business"; that the ordinance violates the First, Fifth and Fourteenth Amendments to the Constitution of the United States and the Constitution of the State of Oregon; that it denies to the plaintiff freedom of speech and equal protection of the laws and:

"discriminates against the plaintiff and in favor of persons engaged in the sale of such merchandise or similar merchandise in that other persons not described in said purported ordinance are permitted to engage in the activities described in the said purported ordinance in that under said purported ordinance, persons who are not solicitors, peddlers, hawkers, itinerant merchants, transient vendors of merchandise are permitted to solicit orders for the sale of goods, wares and merchandise and/or for the purpose of disposing of and/or peddling or hawking the same although they have not been requested or invited to do so by the owner or owners, occupant or occupants of private residences in the City of Bend, State of Oregon."

Plaintiff denies that his business is a nuisance in fact or in law and finally alleges that he has been prevented from carrying on his business in the City of Bend; that he has been threatened with arrest and is suffering irreparable damage. He seeks a temporary and permanent injunction. The general demurrer was sustained, the case dismissed and plaintiff appeals.

Since this case was argued, the Supreme Court of the United States has upheld the validity of an ordinance which is substantially identical to the enactment of the City of Bend. Most of the contentions which are made by the plaintiff here were considered and

rejected. *Jack H. Breard, Appellant v. City of Alexandria,* decided 4 June 1951. Breard was arrested:

"while going from door to door in the City of Alexandria, Louisiana, soliciting subscriptions for nationally known magazines. The arrest was solely on the ground that he had violated an ordinance because he had not obtained the prior consent of the owners of the residences solicited. Breard, a resident of Texas, was in charge of a crew of solicitors who go from house to house in the various cities and towns in the area under Breard's management and solicit subscriptions for nationally known magazines and periodicals * * *."

At the trial for violation of the ordinance, Breard moved to quash the complaint on the ground that the ordinance violates the Due Process Clause of the Fourteenth Amendment to the Federal Constitution; the Federal Commerce Clause and the guarantees of the First Amendment concerning freedom of speech which are made applicable to the states by the Fourteenth Amendment to the Constitution of the United States. The motion to quash was overruled and the defendant was found guilty and sentenced. The Supreme Court of Louisiana affirmed. On the appeal, the United States Supreme Court first considered the contention that the ordinance was violative of the Due Process Clause. The Court said:

"* * * This case calls for an adjustment of constitutional rights in the light of the particular living conditions of the time and place. Everyone cannot have his own way and each must yield something to the reasonable satisfaction of the needs of all.

"* * * Door-to-door canvassing has flourished increasingly in recent years with the ready market furnished by the rapid concentration of housing.

The infrequent and still welcome solicitor to the rural home became to some a recurring nuisance in towns when the visits were multiplied. Unwanted knocks on the door by day or night are a nuisance or worse to peace and quiet. The local retail merchant, too, has not been unmindful of the effective competition furnished by house-to-house selling in many lines. As a matter of business fairness, it may be thought not really sporting to corner the quarry in his home and through his open door put pressure on the prospect to purchase. As the exigencies of trade are not ordinarily expected to have a higher rating constitutionally than the tranquillity of the fireside, responsible municipal officers have sought a way to curb the annoyances while preserving complete freedom for desirable visitors to the homes. The idea of barring classified salesmen from homes by means of notices posted by individual householders was rejected early as less practical than an ordinance regulating solicitors.''

The Court then reviewed the decisions in *Town of Green River v. Fuller Brush Co.*, 65 F. 2d 112, and *Town of Green River v. Bunger*, 50 Wyo. 52, 58 P. 2d 456, in both of which cases the so-called Green River ordinances were upheld. The Court noted the fact that Green River ordinances had been upheld in five states and had been held invalid in eleven states. The Bunger case was appealed to the United States Supreme Court where the appeal was dismissed for want of a substantial federal question by a per curiam opinion. From the opinion in *Breard v. Alexandria* we quote:

"The opinions of this Court since this Green River case have not given any ground to argue that the police power of a state over soliciting has constitutional infirmities under the due process principle embodied in the concept of freedom to carry on an inoffensive trade or business. Decisions such

as Liebmann and Tanner, supra, invalidating legislative action, are hardly in point here. * * * The Green River ordinance can be characterized as prohibitory of appellant's legitimate business of obtaining subscriptions to periodicals only in the limited sense of forbidding solicitation of subscriptions by house-to-house canvass without invitation. All regulatory legislation is prohibitory in that sense. The usual methods of solicitation—radio, periodicals, mail, local agencies—are open. Furthermore, neither case is in as strong a position today as it was when Bunger appealed. See Olsen v. Nebraska, 313 U.S. 236, 243, et seq., and Lincoln Union v. Northwestern Co., 335 U.S. 525, 535.

"The Constitution's protection of property rights does not make a state or a city impotent to guard its citizens against the annoyances of life because the regulation may restrict the manner of doing a legitimate business. The question of a man's right to carry on with propriety a standard method of selling is presented here in its most appealing form—an assertion by a door-to-door solicitor that the Due Process Clause of the Fourteenth Amendment does not permit a state or its subdivisions to deprive a specialist in door-to-door selling of his means of livelihood. But putting aside the argument that after all it is the commerce, i. e., sales of periodicals, and not the methods, that is petitioner's business, we think that even a legitimate occupation may be restricted or prohibited in the public interest. See the dissent in New State Ice Co. v. Liebmann, 285 U.S. 262, 280, 303. The problem is legislative where there are reasonable bases for legislative action. We hold that this ordinance is not invalid under the Due Process Clause of the Fourteenth Amendment."

The Court next considered and rejected the contention that the Alexandria ordinance is invalid under the Commerce Clause. With this portion of the opinion

we are not concerned. Lastly the Court considered and rejected the contention that the Green River ordinances constitute an abridgment of the right of freedom of speech. The Court said:

"* * * Only the press or oral advocates of ideas could urge this point. It was not open to the solicitors for gadgets or brushes. The point is not that the press is free of the ordinary restraints and regulations of the modern state, such as taxation or labor regulation, referred to above at n. 24, but, as stated in appellant's brief, 'because the ordinance places an arbitrary, unreasonable and undue burden upon a well established and essential method of distribution and circulation of lawful magazines and periodicals and, in effect, is tantamount to a prohibition of the utilization of such method.' Regulation necessarily has elements of prohibition. Thus the argument is not that the money-making activities of the solicitor entitle him to go 'in or upon private residences' at will, but that the distribution of periodicals through door-to-door canvassing is entitled to First Amendment protection. This kind of distribution is said to be protected because the mere fact that money is made out of the distribution does not bar the publications from First Amendment protection. We agree that the fact that periodicals are sold does not put them beyond the protection of the First Amendment. The selling, however, brings into the transaction a commercial feature.

"The First and Fourteenth Amendments have never been treated as absolutes. Freedom of speech or press does not mean that one can talk or distribute where, when and how one chooses. Rights other than those of the advocates are involved. By adjustment of rights, we can have both full liberty of expression and an orderly life.

"* * *

"* * * It would be, it seems to us, a misuse of the great guarantees of free speech and free

press to use that guarantee to force a community to admit the solicitors of publications to the home premises of its residents. We see no abridgement of the principles of the First Amendment in this ordinance.''

■ Upon the principal issues raised in the case at bar, the highest court in the land has spoken and its word is law. We hold that the ordinance is not violative of the Due Process Clause, nor does it infringe the plaintiff's rights of free speech.

Since the decision in the Breard case, the plaintiff has filed a memorandum in which he contends that:

"There are two phases involved in the case at bar, which were not and could not be considered and decided by the Supreme Court of the United States and they are:
    (a) The Ordinance is discriminatory. (Assignment of Error No. 2.)
    (b) The Ordinance is ultra vires. (Assignment of Error No. 3.)''

EQUAL PROTECTION OF THE LAWS

We will first consider whether the ordinance is invalid because discriminatory. Upon this issue the plaintiff relies upon the Equal Protection Clause of the Federal Constitution, and Article I, Section 20 of the Constitution of Oregon, which provides:

"No law shall be passed granting to any citizen or class of citizens, privileges or immunities which, upon the same terms, shall not equally belong to all citizens.''

■■ We have held that the tests as to both provisions are the same. *State v. Savage,* 96 Or. 53, 59, 184 P. 567, 189 P. 427, and *Savage v. Martin,* 161 Or. 660, 693,

91 P. 2d 273. We observe that the ordinance applies to persons who engage in "the practice" of going upon private property for the purposes specified. "A 'practice' is a custom or usage, something habitually and uniformly performed, and it implies uniformity and continuity." *Wells Lamont Corporation v. Bowles,* 149 F. 2d 364, syl. 2.

■■ The ordinance applies to the activities of solicitors, peddlers, hawkers, itinerant merchants, transient vendors of merchandise and transient photograph solicitors. The ordinance reaches only persons whose business (though not necessarily whose only business) is such as to characterize them as being within the described class. *State of Arizona v. Jobin,* 58 Ariz. 144, 118 P. 2d 97. The plaintiff alleges himself to be engaged "in the business of selling * * *." "'Solicit' is defined as 'to importune'; to endeavor to obtain by asking or pleading'." *City of Portland v. Stevens,* 180 Or. 514, 524, 178 P. 2d 175. The word "solicitors" applies "to all individuals who are engaged or employed specially for the purpose of soliciting, importuning or entreating for the purchase of goods, etc." *Ex parte Siebenhauer,* 14 Nev. 365. See also *Lowenthal v. Underdown,* 132 Tenn. 559, 179 S.W. 129; *Keene v. Frick Co.,* (Iowa) 93 N.W. 582; *Village of Scribner v. Mohr,* 90 Neb. 21, 132 N.W. 734; *Murphy v. Campbell Soup Co.,* 40 F. 2d 671.

"* * * a peddler is one who goes from place to place and from house to house carrying for sale and exposing to sale goods, wares, and merchandise which he carries, or, better, he is an itinerant, solicitant vendor of goods who sells and delivers to consumers the identical goods which he carries with him. * * *" 40 Am. Jur., Peddlers, Transient Dealers, and Solicitors, § 3, p. 910.

■ Every peddler solicits orders, and is, to that extent, a solicitor, but, every solicitor is not necessarily a peddler. The plaintiff dismisses the suggestion that he is a solicitor with a mere ipsi dixit. In this we think he errs. Plaintiff appears to be both a solicitor and a peddler. The complaint alleges that when demonstrations are made, the plaintiff and his salesmen "solicit [to] the owners or occupants of private residences to purchase such equipment" and if the owners or occupants of such private residences purchase such equipment, delivery is made at said time and place of demonstration "or an order is taken for delivery of such equipment and delivery is made thereafter;" His allegations establish that plaintiff is both a solicitor who takes orders for future delivery, and a peddler who delivers the goods on the spot.

The plaintiff construes the ordinance to mean that local merchants having places of business in Bend may do business in the manner described in the ordinance, but that a peddler, itinerant merchant or transient vendor of merchandise cannot. We do not so construe this ordinance. In *De Witt v. State,* 155 Wis. 249, 144 N.W. 253, the defendant was convicted of conducting the business of peddling without a license contrary to statute. He obtained his stock under contract with a wholesaler, the contract giving him the character of an exclusive agent for the seller within the specified territory, but he was in fact dealt with as a purchaser of the goods. He ordered the goods in quantities, stored them at his home, stocked his wagon, and there restocked it from time to time. The Court said:

"It is next said plaintiff in error, because of having a fixed place of abode in this state and place for accumulating merchandise from which to stock his wagon from time to time, was not a peddler

within meaning of the statute; and we are favored with several definitions of the term 'peddler' to support that view. Such term has no very technical meaning. Its ordinary popular meaning was incorporated into the law. That is so well known, a resort to learned discussions in respect to it in legal opinions, or to its peculiar ancient definition, is confusing rather than illuminating. A peddler is not necessarily 'a deceitful fellow' satisfying the old ideas found in Jacob's Law Dictionary; nor is he necessarily, a person having no fixed business domicile, nor one who carries his entire stock of merchandise with him. He may be a very honorable man and yet be a peddler. He may have a fixed business domicile and yet be a peddler, and he may be such regardless of whether he carries the whole or a part of his stock of goods with him. The essential thing is that he must do business by going about from place to place selling and delivering merchandise in a retail way to such individuals as he may be able to deal with. While doing that he is a peddler though he may, at the same time, have a business domicile to which he occasionally resorts. It is the method of disposing of the goods which makes the person a peddler. A peddler is simply one who peddles, and any one peddles who sells at retail from place to place, going from house to house, carrying the goods to be offered for sale with him. That plaintiff in error satisfied all the requisites of that vocation, does not admit of a doubt.''

In *Crawley v. State,* 57 Ga. App. 376, 195 S.E. 453, the court reviewed the conviction of the defendant who was charged with peddling without a license. The court said:

''* * * While the modern legal conception of a peddler retains the basic essential idea of one who travels from place to place carrying goods which he exposes for sale, sells and delivers to whomsoever he might prevail on to buy, it, on the other

hand, discards the ordinary, but nonessential attributes of this class as they originally existed. Thus, it is no longer true that a peddler is one who travels exclusively on foot. Locomotion is important but the manner thereof is immaterial. Neither is it necessary that a peddler be a wanderer, having no permanent local habitation. 'A peddler is one who goes from place to place exhibiting his wares and actually selling the same whenever he finds the opportunity.' "

In *Brown v. State,* 177 Md. 321, 9 A. 2d 209, the defendant was convicted of operating as a peddler without a license. The court said:

"* * * The licensee is one who has a stock in trade, and the fee is graduated in amount according to the amount of that stock in trade. Secs. 45 to 65. If the appellant's employer has a place of business or headquarters for his trade, it may be necessary for him to take out a trader's license for it, but whether it is or is not, when he sends out hawkers and peddlers of the ice cream he must, under the law as we see it, have hawkers and peddlers licenses for them."

The definition quoted supra from 40 Am. Jur. 910 is described in the text as "a comprehensive and approved modern definition." Counsel for the plaintiff relies on the following from the same volume and page: "A peddler is also defined as an itinerant individual without local habitation or place of business * * *." One case only is cited in support, namely, *City of Davenport v. Rice,* 75 Iowa 74, 39 N.W. 191. That case does not support the text. The statement by the court was as follows: "A peddler is an itinerant individual, *ordinarily* without local habitation or place of business." The ordinance in that case provided that no person shall hawk or peddle without a license. It did

not require a license for one soliciting orders for future delivery. After repeating ancient definitions of the word "peddler" the court said:

"* * * Under these definitions we suppose that if an itinerant person should deposit his goods in a car or room and from that place as a depository he should take his wares through the city, from place to place, for sale, he would be a peddler. But the establishment represented by the defendant had its operators where its goods were exposed for sale, and where they were actually sold, and the solicitation of orders for goods by sample was in no sense peddling. * * *"

While there are a few cases to the contrary, we find more than a score of judicial definitions of "peddler" which contain no intimation that to be a peddler one must have no local habitation or place of business. 31 Words and Phrases, Perm. Ed., pp. 555 to 558.

Other cases cited by the plaintiff are: *White v. Town of Culpeper,* 172 Va. 630, 1 S.E. 2d 269; *Ex parte Dees,* 46 Cal. App. 656, 189 P. 1050; *Jewel Tea Co. v. Town of Bel Air,* 172 Md. 536, 192 A. 417; *Ralph v. City of Wenatchee,* 34 Wash. 2d 638, 209 P. 2d 270; *State v. Wright,* 53 Or. 344, 100 P. 296; *Chan Sing v. Astoria,* 79 Or. 411, 155 P. 378. Several of the cases cited are directly contrary to *Breard v. City of Alexandria,* supra, and all of them are clearly distinguishable from the case at bar. Of course, as some of the cases hold, a person having a fixed place of business, and selling, or offering to sell from that place, or making deliveries therefrom to regular customers, is not, by reason of that fact alone, brought within the purview of the ordinance. *Forest v. Morgan,* 7 N.Y.S. 2d 988; *National Baking Co. v. Zabel,* 227 Wis. 93, 277 N.W. 691.

■■ So far as the ordinance relates to solicitors, we find within it no basis for the contention that local solicitors are exempted. The fact that the ordinance refers to solicitors and also to certain transient solicitors, would indicate that both the local and the transient are within its terms. So far as the ordinance relates to peddlers, we hold that it includes both local and transient persons. It specifically includes "peddlers" and "transient vendors", but the ordinance covers no one, even as a solicitor or as a peddler, unless the person is one who, as a practice, and as a part of his business, goes in and upon private property and calls at residences, not having been requested or invited so to do, by the owner or occupant, for the purpose of soliciting orders and peddling, or for the purpose of soliciting orders or peddling. To be a peddler he must be an itinerant solicitant vendor of goods, who sells and delivers to consumers the goods which he carries with him. 40 Am. Jur. 910, supra. One may be a peddler, notwithstanding the fact that he has somewhere a fixed place of abode or a fixed place from which he takes his goods on his itinerant journeys from house to house. Plaintiff vehemently asserts that he is a peddler. He also alleges that his business is selling and taking (soliciting) orders for future delivery in the municipalities in the State of Oregon "including the City of Bend" and "that he is a citizen of Bend." He belongs to the very class of local persons in whose favor he erroneously asserts the ordinance discriminates. There is no such discrimination. He, a resident of Bend, is a solicitor and peddler within the meaning of the ordinance, and under facts alleged in his complaint.

■ While we recognize the usual distinction between a solicitor and a peddler, nevertheless we find signifi-

cance in several well considered cases which hold that one who, as an itinerant, engages in the practice of going from house to house soliciting orders for future delivery may be deemed a peddler. *Fallis v. Gas City,* 169 Ind. 508, 82 N.E. 1056; *Graffty v. City of Rushville,* 107 Ind. 502, 8 N.E. 609. These cases at least indicate the close resemblance between soliciting and peddling as defined in the ordinance, and strongly imply that all acts forbidden by the ordinance belong to a class which may be reasonably singled out for regulation. The annoyance and inconvenience to the public which arises from repeated, uninvited importunity constitutes the factor which is common to the practice of solicitors and peddlers who invade the privacy of the home. The municipal ordinance which places them in a single class for the purpose of regulation is not manifestly arbitrary or without reasonable basis and the legislative discretion will therefore not be disturbed. *State ex rel. Veatch et al. v. Franklin,* 163 Or. 500, 98 P. 2d 724; *Savage v. Martin,* supra. As said in *Breard v. City of Alexandria,* "The problem is legislative where there are reasonable bases for legislative action." Again the Court said, "We think Alexandria's ordinance falls in the classification of regulation." *Ideal Tea Co. v. Salem,* 77 Or. 182, 150 P. 852, is not inconsistent with our conclusion here. In that case local merchants having a regular place of business were expressly exempted from the ordinance even though they engaged in the practice of peddling as defined in the ordinance. Our construction of the ordinance is in conformity with that adopted by the Supreme Court of Colorado in *McCormick v. City of Montrose,* 105 Colo. 493, 99 P. 2d 969. In that case

the validity of a Green River ordinance was upheld. The court said:

"* * * The ordinance is couched in language broad enough to include the solicitor for a foreign corporation, the solicitor for the local dealer or merchant, the blind broom peddler, and the boy seeking to sell Colliers, Liberty, or the Saturday Evening Post. * * *"

As thus construed, we hold that the ordinance of the City of Bend is not violative of Article I, Section 20 of the Oregon Constitution or the Equal Protection Clause of the Federal Constitution. Our conclusion is supported by the following decisions: *Ex parte Case,* 70 Or. 291, 135 P. 881, 141 P. 746; *McCormick v. City of Montrose,* and *Town of Green River v. Fuller Brush Co.,* both supra; *Rowe v. City of Pocatello,* 70 Idaho 343, 218 P. 2d 695; *Town of Green River v. Bunger,* supra, (appeal dismissed in per curiam opinion by the United States Supreme Court for want of a substantial federal question) 300 U.S. 638, 81 L. Ed. 854; *City of Shreveport v. Cunningham,* 190 La. 482, 182 S. 649; *City of Alexandria v. Jones,* 216 La. 923, 45 S. 2d 79; *Breard v. City of Alexandria,* 69 F. Supp. 722; *Green v. Town of Gallup,* 46 N. M. 71, 120 P. 2d 619.

## ULTRA VIRES

The plaintiff's contention that the ordinance was ultra vires is predicated upon its other contentions which we have already rejected.

■ Without considering whether the City of Bend has lost the specific powers granted to it by the General Incorporation Act of 1893, we hold that the city had power to enact the ordinance in question under the provisions of its charter, adopted in 1928 under the

Home Rule Amendments to the state constitution. Under that charter the commission is authorized:

"To make ordinances, by-laws, and regulations, and to grant franchises not repugnant to the laws of the state of Oregon or of the United States, that shall be deemed necessary to secure the peace, health and general welfare of the city and of its inhabitants.

"Chap. VII, Art. B, Sec. 1.

"To license, tax and regulate all such callings, trades, professions or employments as in the opinion of the Commission the public health or good may require to be licensed, taxed or regulated except such as not prohibited by the laws of the state of Oregon or of the United States.

"Chap. VII, Art. H, Sec. 6.

"To license, tax, regulate, restrain or suppress all offensive trades, professions or occupations.

"Chap. VII, Art. H, Sec. 7.

"To prevent, regulate, prohibit and remove nuisances and to declare by ordinance what shall constitute the same and to make the expense of abating such nuisances a lien upon the property where they existed.

"Chap. VII, Art. G, Sec. 1."

The authority of cities under similar charter provisions to enact similar legislation was upheld in the cases last above cited. The enactment of the ordinance was not ultra vires and the judgment of the circuit court is affirmed.