Argued and submitted June 24, reversed on both appeals October 14, reconsideration denied December 11, 1987, petition for review allowed January 6, 1988 (304 Or 680)

CITY OF HILLSBORO,
*Respondent,*

*v.*

PURCELL,
*Appellant.*

(85-0424; CA A41670 (control))

CITY OF HILLSBORO,
*Respondent,*

*v.*

DOMINICI,
*Appellant.*

(85-0425; CA A41671)
(Cases consolidated)

743 P2d 1119

Gordon T. Carey, Jr., Portland, argued the cause for appellants. With him on the briefs was David M. Taylor, Portland.

Todd A. Bradley, Portland, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendants are door-to-door salesmen. They appeal[1] their convictions for violating an ordinance of the city of Hillsboro, which prohibits "calling at residences" to make sales or for certain other commercial purposes. In legal literature it has been known as a "Green River Ordinance." Defendants argue that the ordinance violates the federal and state constitutions in a number of respects. We agree with their contention that the ordinance violates their rights of expression under Article I, section 8, of the Oregon Constitution.[2] On that basis, we reverse the convictions and need not address their other arguments.

Section 1 of Hillsboro ordinance no. 2488-2-72 provides:

> "That the practice of persons going in and upon private property or calling at residences in the city of Hillsboro, Oregon, by solicitors, peddlers, hawkers, itinerant merchants, transient vendors of merchandise and transient photograph solicitors, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares, merchandise and/or for the purpose of disposing of and/or peddling or hawking the same, or soliciting orders for photographs, is hereby prohibited and declared to be a nuisance and punishable as such nuisance as a misdemeanor. However, the provisions of this section shall not apply to utilities, franchised to operate in the city of Hillsboro."

The city argues at the outset that most of defendants' arguments, including their federal and state constitutional free speech arguments, must be decided adversely to them, because *Breard v. Alexandria,* 341 US 622, 71 S Ct 920, 95 L Ed 1233 (1951), and *Phillips v. City of Bend,* 192 Or 143, 234 P2d 572 (1951), are contrary to the arguments and are controlling. Both decisions upheld ordinances comparable to the one in question against federal free speech and other constitutional challenges.

---

[1] The appeals are consolidated.

[2] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

We do not agree that either case is controlling in connection with the Article I, section 8, issue. *Phillips* was decided shortly after *Breard v. Alexandria, supra.* It did not even refer to Article I, section 8. Its free speech analysis consists almost entirely of an extensive discussion of and extensive quotations from the First Amendment analysis in *Breard.* After discussing *Breard,* the court cryptically concluded in *Phillips:*

> "Upon the principal issues raised in the case at bar, the highest court in the land has spoken and its word is law. We hold that the ordinance is not violative of the Due Process Clause, nor does it infringe the plaintiff's rights of free speech." 192 Or at 153.

The word of the highest court in the land is not controlling law with respect to Article I, section 8. Because *Phillips* did not address the state law issue, and because *Breard* obviously did not and could not, neither is dispositive.

In *Schaumburg v. Citizens for Better Environ.,* 444 US 620, 100 S Ct 826, 63 L Ed 2d 73 (1980), the United States Supreme Court reiterated that, although they are subject to reasonable regulation, charitable, political and other noncommercial "solicitations in residential neighborhoods are within the protections of the First Amendment." 444 US at 633. In reaching that conclusion, the Court distinguished *Breard:*

> "That case involved an ordinance making it criminal to enter premises without an invitation to sell goods, wares, and merchandise. The ordinance was sustained as applied to door-to-door solicitation of magazine subscriptions. The Court held that the sale of literature introduced 'a commercial feature,' * * * and that the householder's interest in privacy outweighed any rights of the publisher to distribute magazines by uninvited entry on private property. The Court's opinion, however, did not indicate that the solicitation of gifts or contributions by religious or charitable organizations should be deemed commercial activities, nor did the facts of *Breard* involve the sale of religious literature or similar materials." 444 US at 631.

*See also Martin v. Struthers,* 319 US 141, 63 S Ct 862, 87 L Ed 1313 (1943).

■ Consequently, as the Supreme Court views the First Amendment, its application to noncommercial door-to-door

solicitations differs from its application to commercial solicitations. However, Article I, section 8, does not permit commercial and noncommercial speech to be regulated differently on the basis of content. *Ackerley Communications, Inc. v. Mult. Co.,* 72 Or App 617, 696 P2d 1140 (1985), *rev dismissed* 303 Or 165, 734 P2d 885 (1987); *see also* Or Const, Art I, § 20. The challenged ordinance applies only to commercial door-to-door communications.[3] It is therefore unconstitutional.[4]

Reversed on both appeals.

---

[3] Defendants argue, apparently in support of their contentions that the ordinance is overbroad and vague, that it has been applied by the city police against certain noncommercial solicitations. However, on its face, the ordinance plainly applies only to commercial speech and activities. An ordinance does not have to be unclear in order to be misapplied.

[4] It is reasonably clear that an outright prohibition of noncommercial door-to-door communications would not be permissible under the First Amendment. *See, e.g., Hynes v. Mayor of Oradell,* 425 US 610, 96 S Ct 1755, 48 L Ed 2d 243 (1976); *Martin v. Struthers, supra.* Axiomatically, a city is required to afford at least as much protection to noncommercial speech as the First Amendment requires. It is also required by Article I, section 8, as we construed it in *Ackerley Communications, Inc. v. Mult. Co., supra,* to regulate commercial speech no more rigorously than it does noncommercial speech, even though the First Amendment, as construed in *Breard,* does permit an outright prohibition of door-to-door commercial expression. We need not decide how authoritative *Breard* remains in the light of subsequent United States Supreme Court decisions relating to First Amendment protection of commercial speech. *See Metromedia, Inc. v. San Diego,* 453 US 490, 101 S Ct 2882, 69 L Ed 2d 800 (1981).