Argued and submitted March 2, the decision of the Court of Appeals affirmed and decision of the circuit court reversed September 20, 1988

# CITY OF HILLSBORO,
*Petitioner on Review,*

*v.*

# PURCELL,
*Respondent on Review.*
(TC 85-0424; CA A41670 (Control))

# CITY OF HILLSBORO,
*Petitioner on Review,*

*v.*

# DOMINICI,
*Respondent on Review.*

(TC 85-0425; CA A41671)
(SC S34643)
(Cases Consolidated)

761 P2d 510

Todd A. Bradley, Portland, argued the cause and filed the petition for petitioner on review.

Gordon T. Carey, Jr., Portland, argued the cause for respondents on review. With him on the briefs was David M. Taylor, Portland.

James M. Coleman, Paul C. Elsner and Peter A. Kasting, Lake Oswego, filed an *amicus curiae* brief on behalf of the League of Oregon Cities.

Thomas A. Balmer, Portland, filed an *amicus curiae* brief on behalf of ACLU Foundation of Oregon, Inc.

Dave Frohnmayer, Attorney General, Virginia L. Linder, Solicitor General, and Kendall M. Barnes, Assistant Attorney General, Salem, filed an *amicus curiae* brief on behalf of the State of Oregon.

CAMPBELL, J.

## CAMPBELL, J.

We must decide whether Article I, section 8, of the Oregon Constitution, providing that "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever * * *," prohibits a Hillsboro city ordinance which makes criminal "the practice of persons going in and upon private property or calling at residences * * * not having been requested or invited so to do * * * for the purpose of soliciting orders for the sale of goods, wares, merchandise and/or for the purpose of disposing of and/or peddling or hawking the same * * *." Ordinance No. 2488-2-72, section 1.[1]

Defendants were convicted in municipal court for selling household products door-to-door and fined $110 each. The cases were consolidated and tried de novo on appeal to the circuit court, ORS 221.350, 221.360, which affirmed the convictions. On appeal, the Court of Appeals held that the ordinance violated Article I, section 8, of the Oregon Constitution and reversed the convictions. We affirm.

I

The Hillsboro Charter authorizes the city council to "license, tax and regulate any and all persons engaging in mercantile, manufacturing, mechanical, business or professional pursuits or vocations * * *," "to prevent and remove nuisances and to declare what shall constitute the same * * *." Chapter VI, §§ 39, 52. In addition to civil regulation, the council may "punish by fine or imprisonment or both any person or persons who shall cause or continue any nuisance

---

[1] The Hillsboro City Council passed Hillsboro Ordinance No. 2488-2-72 on February 15, 1972. It was referred to the voters and adopted on May 23, 1972. Section 1 provides:

"That the practice of persons going in and upon private property or calling at residences in the city of Hillsboro, Oregon, by solicitors, peddlers, hawkers, itinerant merchants, transient vendors of merchandise and transient photograph solicitors, not having been requested or invited so to do by the owner or owners, occupant or occupants of said private residences, for the purpose of soliciting orders for the sale of goods, wares, merchandise and/or for the purpose of disposing of and/or peddling or hawking the same, or soliciting orders for photographs, is hereby prohibited and declared to be a nuisance and punishable as such nuisance as a misdemeanor. However, the provisions of this section shall not apply to utilities, franchised to operate in the city of Hillsboro."

* * *." Chapter VI, § 53. The city has declared door-to-door solicitation a nuisance punishable as a misdemeanor.

■      Cases from an earlier era disposed of anti-solicitation ordinances similar to Hillsboro's as beyond authority of local governments to enact under their "police" powers. *Jewel Tea Co. v. City of Geneva,* 137 Neb 768, 291 NW 664 (1940); *N.J. Good Humor, Inc., v. Bradley Beach,* 123 NJL 21, 7 A2d 824 (1939), 124 NJL 162, 11 A2d 113 (1940) (former judgment vacated and ordinance struck); *White v. Town of Culpeper,* 172 Va 630, 1 SE2d 269 (1939); *Prior v. White,* 132 Fla 1, 180 So 347, 116 ALR 1176 (1938); *Tea Company v. Bel Air,* 172 Md 536, 192 A 417 (1937); *City of Orangeburg v. Farmer,* 181 SC 143, 186 SE 783 (1936). But we no longer take such a limited view of the regulatory powers of governments, *Burt v. Blumenauer,* 299 Or 55, 61, 699 P2d 168 (1985), even if we do not ordinarily make reference to "police" powers. *See* Linde, *Without "Due Process,"* 49 Or L Rev 125, 146-158 (1970). The Hillsboro City Council has, within its authority, designated door-to-door sales a nuisance punishable as a misdemeanor.[2] The question is whether the authorized ordinance exceeds constitutional limitations.

## II

The Hillsboro "Green River" ordinance is an almost verbatim replica of its namesake enacted by the town of Green River, Wyoming, in 1931. The ordinances seemed to have swept the country in the Thirties, followed closely by court challenges to their legality. *See* Note and Comment, *Constitutional Law—Freedom of Press—Freedom of Speech—Right of Religious Sects to Distribute Literature,* 21 Or L Rev 76 (1941). Tea, brush, ice cream, hosiery, magazine and vacuum cleaner merchants, some representing substantial national concerns which generated business only through door-to-door sales, challenged the ordinances under theories then in currency: violation of liberty of contract, interference with interstate

---

[2] Defendants made the argument below, as did the defendants in *Phillips v. City of Bend,* 192 Or 143, 161-62, 234 P2d 572 (1951), that the city's authority to "license, tax and regulate" did not include authority also to prohibit commercial pursuits. Distinctions can be drawn between the Hillsboro and the Bend charter. Bend's charter not only authorized the city to "license, tax and regulate" trades and professions but also to "restrain or suppress" those that were "offensive." Hillsboro's authority to "regulate" authorizes this ordinance.

commerce, discrimination against non-residents and, as mentioned above, excessive police powers. As the above cases indicate, the ordinances were sometimes struck down; in other cases they were sustained. *See City of Shreveport v. Cunningham,* 190 La 481, 182 So 649 (1938); *Town of Green River v. Bunger,* 50 Wyo 52, 58 P2d 456 (1936). When the United States Supreme Court upheld a Louisiana town's conviction of a door-to-door magazine seller, an employee of a national periodical distributor, the legality of the "Green River" ordinance was, for a time, secure. *Breard v. Alexandria,* 341 US 622, 71 S Ct 920, 95 L Ed 1233 (1951). Shortly after the *Breard* decision, this court upheld Bend's "Green River" ordinance against, among other federal constitutional claims, a First Amendment challenge. *Phillips v. City of Bend,* 192 Or 143, 161, 234 P2d 572 (1951).

In *Breard* the U.S. Supreme Court dismissed the asserted free speech claims of "solicitors for gadgets and brushes" because selling, though involving speech and, in that case, a printed product, carried a "commercial feature." 431 US at 641, 642. The sentiments echoed those of an earlier opinion, *Valentine v. Chrestensen,* 316 US 52, 62 S Ct 920, 86 L Ed 1262 (1942), which upheld New York city's prohibition on handbill distribution in the streets as applied to a primarily commercial advertisement for a submarine tour. In *Breard* the Court carefully distinguished the door-to-door contacts that governments could not prohibit: the distribution of religious or political handbills and circulars, an activity the Court in *Martin v. City of Struthers,* 319 US 141, 63 S Ct 862, 87 L Ed 1313 (1943), had called "essential to the poorly financed causes of little people." 319 US at 146; *cf. DeBartolo Corp. v. Fla. Gulf Coast Tr. Counc.,* No. 86-1461 (US April 20, 1988) (construing the NLRA not to prohibit peaceful handbilling by union during labor dispute). The *Breard* dissenters objected to enforcing the ordinance against distributors of magazines, a printed product, but they were willing to uphold the ordinance if applied to a "merchant" who goes door-to-door "selling pots." 341 US at 650 note *, *Martin v. City of Struthers,* 319 US at 144. When a Virginia newspaper publisher was convicted for printing an advertisement for legal abortions at a New York clinic in violation of a Virginia statute prohibiting "promoting" abortions, the full Court confronted restraints on "freedom of * * * the press" and embarked on a reconsideration of First Amendment protections for "commercial"

speech. *Bigelow v. Virginia,* 421 US 809, 95 S Ct 2222, 44 L Ed 2d 600 (1975).

The United States Supreme Court has since come to consider "commercial" speech "protected" by the First Amendment. It has held, though not with uniformity of rationale, that governments can regulate it to a greater degree and for different purposes than other protected speech. *Metromedia, Inc. v. San Diego,* 453 US 490, 101 S Ct 2882, 69 L Ed 2d 800 (1981); *Central Hudson Gas & Elec. v. Public Serv. Comm'n,* 447 US 557, 100 S Ct 2343, 65 L Ed 2d 341 (1980); *Ohralik v. Ohio State Bar Assn.,* 436 US 447, 98 S Ct 1912, 98 S Ct 1925, 56 L Ed 2d 444 (1978); *Va. Pharmacy Bd. v. Va. Consumer Council,* 425 US 748, 96 S Ct 1817, 48 L Ed 2d 346 (1976). Having placed the ordinance in its historical setting, we turn to the Oregon Constitution.

## III

The nature of the prohibition, either civil or criminal, is immaterial to the first sentence of Article I, section 8, which directs that "no law" shall restrict or restrain speech, writing and printing.[3] We have made distinctions between civil and criminal remedies with regard to an "abuse" of speech or writing and held that civil remedies but not criminal may redress "abuses" of these rights. *Lewis v. Oregon Beauty Supply Co.,* 302 Or 616, 733 P2d 430 (1987); *Bank of Oregon v. Independent News,* 298 Or 434, 693 P2d 35 (1985); *In re Lasswell,* 296 Or 121, 673 P2d 855 (1983); *Hall v. The May Dept. Stores,* 292 Or 131, 145-46, 637 P2d 126 (1981); *Wheeler v. Green,* 286 Or 99, 593 P2d 777 (1979). These cases, with the exception of *Lasswell,* concern abuses after they cause damage, and in *Lasswell* the attorney disciplinary rule prohibiting prosecutors from commenting publicly on an ongoing investigation or trial was based on incompatibility with the prosecutor's function and was held to require a highly likely effect. 296 Or at 126. With regard to prohibitions on speech or writing before some completed abuse of these rights, we have held that government, with few historical exceptions, cannot prohibit speech outright by making it a crime. *State v.*

---

[3] The city presents the fine as a form of civil regulation. In fact, defendants were "adjudged guilty" and "convicted" under an ordinance that characterizes the prohibited conduct as a "misdemeanor."

*Robertson,* 293 Or 402, 649 P2d 569 (1982); *State v. Spencer,* 289 Or 225, 611 P2d 1147 (1980). Neither may it do so through civil prohibitions. *City of Portland v. Welch,* 229 Or 308, 320, 364 P2d 1009, 367 P2d 403 (1961) (on rehearing, unrestrained, unguided discretion to grant licenses can be a prior restraint prohibited by Article I, section 8); *see also Ivancie v. Thornton,* 250 Or 550, 557, 443 P2d 612 (1968) (First Amendment prohibits governments from restricting speech by taxes, license, punishment or withholding of benefits).

The relevant distinction is between outright prohibitions — either criminal or civil — on the one hand, and regulations that do not foreclose expression entirely but regulate when, where and how it can occur. Prohibiting expression by making certain speech or writing criminal, as were the threats in *State v. Robertson, supra,* and the pornographic literature in *State v. Henry,* 302 Or 510, 732 P2d 9 (1987) and *State v. Ray,* 302 Or 595, 733 P2d 28 (1987), or imposing an oppressive licensing procedure, as in *City of Portland v. Welch, supra,* are examples of the former. The zoning ordinance this court recently addressed in *City of Portland v. Tidyman,* 306 Or 174, 759 P2d 242 (1988), is an example of the latter. With regard to these latter regulations, even free speech activities "are not immune from regulations imposed for reasons other than the substance of their particular message," *Tidyman,* 306 Or at 182.[4] In either case, laws must proscribe harm rather than expression itself. *Tidyman, supra.*[5]

■        A facially unconstitutional law — that is, one that

---

[4]        "[A] communication may be offensive in two different ways. Independently of the message the speaker intends to convey, the form of his communication may be offensive — perhaps because it is too loud or too ugly in a particular setting. Other speeches, even though elegantly phrased in dulcet tones, are offensive simply because the listener disagrees with the speaker's message. The fact that the offensive form of some communication may subject it to appropriate regulation surely does not support the conclusion that the offensive character of an idea can justify an attempt to censor its expression." *Consolidated Edison Co. v. Public Service Comm'n of New York,* 447 US 530, 546, 100 S Ct 2326, 65 L Ed 2d 319 (1980) (Stevens, J., concurring in judgment; footnotes omitted).

[5] *Compare DeJonge v. Oregon,* 299 US 353, 364, 57 S Ct 255, 81 L Ed 278 (1937) (striking a conviction under Oregon's Criminal Syndicalism Law for "assisting in the conduct" of a meeting of the Communist Party: "[First Amendment] rights may be abused by using speech or press or assembly in order to incite to violence and crime. The people through their legislatures may protect themselves against that abuse. But the legislative intervention can find constitutional justification only by dealing with the abuse. The rights themselves must not be curtailed.")

expressly prohibits speech — may be upheld if "the restraint is wholly confined within some historical exception that was well established when the first American guarantees of freedom of expression were adopted and that the guarantees then or in 1859 demonstrably were not intended to reach." *State v. Robertson, supra,* 293 Or at 412. The city and amici assert that an exception applies here because prohibitions on door-to-door selling appear in the Deady Code. But the first Oregon statutes *licensed* "peddlers"; they did not prohibit them. *See, e.g.,* General Laws of Oregon 775-76 (Deady 1845-64). These laws may be seen as the lawmakers' acceptance rather than rejection of door-to-door sales as a legitimate way of doing business.[6] In any case, the Hillsboro ordinance prohibits uninvited entries to private property or "calling at residences," but it does not by its terms prohibit speech. It is not unlawful as an outright prohibition on speech. *State v. Robertson, supra,* 293 Or at 412, 416; *State v Moyle,* 299 Or 691, 699, 705 P2d 740 (1985).

Although facially valid, the ordinance focuses on one type of entry — for the purpose of selling merchandise. Selling is a form of communicative behavior that includes speech and may involve goods that are protected expression. Because speech is implicated, we must examine the ordinance for overbreadth.

The parties debate the activities the ordinance prohibits. The city argues that the ordinance prohibits only solicitation by commercial enterprises and exempts the same activities if carried out by community, religious, charitable or political entities.[7] The minutes of the city council meeting at

---

[6] Of course, licensing may implicate speech rights if applied to the sale or distribution of products, such as newspapers and magazines, involving expression. A plurality of the United States Supreme Court recently so held in *Lakewood v. Plain Dealer Publishing Co.,* 56 US 4611, 108 S Ct 2138, 100 L Ed 2d 771 No. 86-1042 (US June 17, 1988), where it struck portions of a city ordinance giving the mayor discretion without guidelines to grant or deny a newspaper's application to place its newspaper vending machines on public property. The Court observed: "Newspapers are in the business of expression, while soda vendors are in the business of selling soft drinks. Even if the soda vendor engages in speech, that speech is not related to the soda; therefore preventing if from installing its machines may penalize unrelated speech, but will not directly prevent that speech from occurring." Slip op at 9.

[7] The city acknowledges that the First Amendment would forbid an all-out ban on door-to-door solicitation by charitable, religious or political groups. *Schaumburg v. Citizens for Better Environ.,* 444 US 620, 100 S Ct 826, 63 L Ed 2d 73 (1980); *see also Riley v. National Federation of the Blind of North Carolina,* No. 87-328 (US June 29, 1988) (invalidating other restrictions on charitable and political solicitation), and *Hynes v. Mayor of Oradell,* 425 US 610, 96 S Ct 1755, 48 L Ed 2d 243 (1976) (same).

which the ordinance was adopted do not show any distinction or exception for solicitations for these purposes or for sales of books, magazines, or newspapers. Councillors were told, and the council's legislative "findings" preceding the prohibitory language of the ordinance reflect, only that the ordinance was designed primarily to control fraud by unscrupulous and unethical solicitors.

The ordinance is overbroad, not because it regulates solicitation for one purpose differently from another, but because it prohibits all solicitation for any purpose at any time. The ordinance as written is broad enough to preclude any person or group from approaching a door in a residential neighborhood to solicit financial support for any purpose through the sale of merchandise. This is far more than a regulation limited to and contained by the consequences the law seeks to prevent.[8]

Though we have on occasion narrowed an overbroad statute to the constitutional confines intended by lawmakers, *see, e.g., State v. Moyle, supra,* we are unable to discern the intended boundaries of this ordinance. The city impermissibly has prohibited all persons from approaching people in their homes at any time to sell merchandise.[9] We do not suggest that the city could not place reasonable limitations on door-to-door solicitations. The city may yet choose to regulate, rather than totally proscribe, door-to-door solicitations. It has not yet done so. We hold that under Article I, section 8, the ordinance is overbroad and cannot be sustained.

---

[8] *Compare City of Watseka v. Illinois Public Action Council,* 796 F2d 1547 (7th Cir 1986), *aff'd without opin,* 479 US 1048, 107 S Ct 919, 93 L Ed 2d 972 (1987) (ordinance prohibiting solicitation for purchases of goods, services and printed material after 5 p.m. held not narrow enough because no reason presented why it could not permit solicitation until 9 p.m.); *see also Wisconsin Action Coalition v. City of Kenosha,* 767 F2d 1248 (7th Cir 1985) (ordinance prohibiting door-to-door solicitations between 8 p.m. and 9 p.m. held invalid as applied to charities and political causes).

[9] Not only would a total ban on soliciting financial support from persons in their homes (either on the doorstep, by telephone or by post) face free speech attack under Article I, section 8, *see State v. Moyle,* 299 Or 691, 705 P2d 740 (1985), it implicates Article I, section 26, as well. Article I, section 26, of the Oregon Constitution provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances (sic)."

The decision of the Court of Appeals is affirmed. The decision of the circuit court is reversed.