Argued and submitted March 14, 2002, decision of Court of Appeals and order of
Driver and Motor Vehicle Services Branch affirmed July 3, 2003

In the Matter of
the Denial of the Application for
the Custom Plates "WINE" "INVINO" "VINO" of

Michael Paul HIGGINS,
*Petitioner on Review,*

*v.*

DRIVER AND MOTOR VEHICLE
SERVICES BRANCH (DMV),
*Respondent on Review.*

(60486; CA A96871; SC S48149)

72 P3d 628

Edmund J. Spinney, American Civil Liberties Union Foundation of Oregon, Springfield, argued the cause and filed the briefs for petitioner on review.

Mary H. Williams, Assistant Solicitor General, Salem, argued the cause and filed the brief for respondent on review. With her on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Carson, Chief Justice, and Gillette, Durham, Riggs, and Balmer, Justices.**

DURHAM, J.

** Leeson, J., resigned January 31, 2003, and did not participate in the decision of this case. De Muniz, J., did not participate in the consideration or decision of this case.

## DURHAM, J.

Petitioner seeks review of a final order issued by an administrative law judge on behalf of the Oregon Department of Transportation, Driver and Motor Vehicle Services Branch (DMV).[1] The order affirmed the decision of DMV to deny issuance of customized vehicle registration plates to petitioner because the configuration of characters that he requested, "WINE," "INVINO," and "VINO," violated an administrative rule prohibiting references to alcoholic beverages on such plates. The order rejected petitioner's contention that the rule violated his right to freedom of expression under Article I, section 8, of the Oregon Constitution and the First Amendment to the United States Constitution. On judicial review, a divided en banc Court of Appeals affirmed the order. *Higgins v. DMV*, 170 Or App 542, 13 P3d 531 (2000). Petitioner sought review. For the following reasons, we affirm.

Proper resolution of this dispute turns on a clear understanding of the nature of vehicle registration plates and, especially, customized registration plates. Oregon law extensively regulates the ownership, registration, and operation of vehicles in the state. ORS 803.300 makes it an offense for a vehicle owner in Oregon to fail to register the vehicle. When the Oregon Department of Transportation (ODOT) registers a vehicle, ODOT must issue to the owner, among other things, two registration plates, ORS 803.525, unless state law authorizes issuance of a single plate. ORS 803.530 requires that the registration plates remain with the vehicle, unless transferred to another vehicle or replaced with ODOT's approval. ORS 803.535(1) provides that registration plates shall be in the size, form, and arrangement selected by, and made of materials determined by, ODOT, including:

---

[1] The order on review describes DMV, in accordance with then-current administrative rules, as the Driver and Motor Vehicle Services Branch. The current name of the agency is Driver and Motor Vehicle Services Division. OAR 735-010-0008(11).

"(d) Except as otherwise authorized under ORS 805.200, all plates shall contain the distinctive number or characters assigned to the vehicle and the word 'Oregon.' "

Oregon statutes authorize ODOT to issue several types of registration plates that exhibit special indicia of registration. *See, e.g.*, ORS 805.210 (special interest vehicles); ORS 805.220 (vehicles of certain elected officials); ORS 805.230 (amateur radio operators' vehicles). As pertinent to this case, ORS 805.240 authorizes issuance of "customized" registration plates:

"The Department of Transportation is authorized to issue customized registration plates upon the request of vehicle owners. Such registration plates shall meet the requirements for registration plates described in ORS 803.535. The fee for issuance of the customized plates is as provided under ORS 805.250."

The registration plates that petitioner sought in this proceeding were customized registration plates within the terms of ORS 805.240.

Under ORS 805.240, customized registration plates must meet the requirements of ORS 803.535, quoted in part above, which provides that the statutory design requirements in ORS 803.535(1)(d) apply "[e]xcept as otherwise authorized under ORS 805.200 * * *." ORS 805.200 grants to ODOT the authority by rule to design several kinds of registration plates, including customized registration plates. ORS 805.200(1) provides, in part:

"The Department of Transportation by rule:

"* * * * *

"(b) May design plates, stickers, plate and sticker combinations or other devices or indicia for distinguishing vehicles registered under specific provisions of the Oregon Vehicle Code other than ORS 805.040 or 805.205 [providing for registration of certain vehicles not involved in this proceeding]. Plates designed under this paragraph shall comply with the requirements of ORS 803.535. The fees for plates or indicia described in this paragraph are provided under ORS 805.250."

Once ODOT issues a registration plate, ORS 803.550 makes it an offense to alter or obscure a registration plate. ORS 803.540 makes it a violation to operate a vehicle in the state without displaying the assigned registration plates in plain view.

The statutory scheme reviewed above demonstrates that registration plates are part of Oregon's detailed scheme for maintaining a state-controlled system for the registration of almost all motor vehicles in the state. The characters that the state assigns to a vehicle's registration plates facilitate the prompt identification of the vehicle for law enforcement purposes. However, the statutes discussed above do not disclose the details of a vehicle owner's role in, and the regulatory standards that govern, the selection of characters for customized registration plates. DMV has addressed those matters in administrative rules, some of which the agency has amended during the course of this proceeding. We turn now to a discussion of those rules and the facts of this case to which they pertain.

In 1996, petitioner submitted customized registration plate applications to DMV in which he requested plates displaying the following characters: "INVINO," "VINO," and "WINE." DMV denied the applications on the ground that the extant administrative rule, *former* OAR 735-46-010(7) (1996), required DMV to deny "custom plate choices that are * * * [d]rug-related words * * *."[2] DMV determined that petitioner's requests were "alcohol/drug related."

DMV afforded petitioner a hearing on the denial and, after the hearing, issued a final order denying the applications. Petitioner sought judicial review of the final order. DMV withdrew the final order under ORS 183.482(6),[3]

---

[2] OAR 735-046-0000(1) provides that " '[c]ustom plates' means customized registration plates as authorized by ORS 805.240."

[3] ORS 183.482(6) provides:

"At any time subsequent to the filing of the petition for review and prior to the date set for hearing the agency may withdraw its order for purposes of reconsideration. If an agency withdraws an order for purposes of reconsideration, it shall, within such time as the court may allow, affirm, modify or reverse its order. If the petitioner is dissatisfied with the agency action after withdrawal for purposes of reconsideration, the petitioner may refile the petition for review and the review shall proceed upon the revised order. An amended

amended its administrative rule, which we quote below, regarding customized registration plates, and reissued its final order denying the applications under the amended rule.[4] Petitioner filed an amended petition for judicial review of the reissued final order.

DMV's amended administrative rule, OAR 735-046-0010, provides, in part:

"(1)  Persons who want to obtain custom plates shall apply to DMV for approval and assignment of the plate choice.

"* * * * *

"(7)  DMV shall not approve a custom plate choice, including plate choices that would do so by means of foreign or slang words or phrases, by use of phonetic, numeric or reverse spelling, or by being viewed in mirror image, that:

"* * * * *

"(b)  Refers to alcoholic beverages, or controlled substances or paraphernalia used in the consumption thereof by combinations of letters, numbers or both."

DMV's administrative rules clarify the standards and procedures that govern issuance of customized registration plates. OAR 735-046-0010 permits a vehicle owner, on payment of a designated fee, to apply for DMV approval and assignment of registration plates that display letters and numbers that the owner chooses, rather than the letters and numbers that DMV's conventional registration plate system would produce. By displaying customized registration plates, vehicle owners can transform what they otherwise might consider to be an uninteresting mix of random letters and numbers into a message that they wish to display on their vehicles, such as "TRIGGR," "BTRMLK," or "10ENE1."

_____

petition for review shall not be required if the agency, on reconsideration, affirms the order or modifies the order with only minor changes. If an agency withdraws an order for purposes of reconsideration and modifies or reverses the order in favor of the petitioner, the court shall allow the petitioner costs, but not attorney fees, to be paid from funds available to the agency."

[4] Although the reissued final order in part referred to the repealed administrative rule, the basis for the denial in that order was the amended administrative rule.

Customized registration plates perform the same vehicle identification function and are subject to the same prohibitions and requirements regarding display, removal, and alteration that apply to conventional registration plates. DMV's administrative rules permit vehicle owners to use their creativity in selecting the characters for customized registration plates. However, the rules restrict the range of permissible choices of license plate characters that DMV will incorporate on a customized registration plate and do so on the basis of the content of the message that the characters requested by the vehicle owner would state or imply. Those content-based restrictions in DMV's rules lie at the heart of the parties' dispute here.

■ On review, petitioner acknowledges that his requests for customized registration plates violated OAR 735-046-0010(7)(b) because each group of characters in his requests referred in some manner to an alcoholic beverage. He contends, however, that the administrative rule is invalid because it limits free speech on the basis of the content of that speech and does not confine its prohibition to some well-established historical exception to the state free speech guarantee. *See State v. Robertson*, 293 Or 402, 412, 649 P2d 569 (1982) (stating analysis under Oregon Constitution, Article I, section 8, including historical exception doctrine). Article I, section 8, of the Oregon Constitution provides:

> "[n]o law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

Petitioner also asserts that the speech conveyed by a customized registration plate is that of the vehicle owner, not the state.

The Court of Appeals divided largely over the question whether the message displayed on a customized registration plate constitutes the speech of the vehicle owner or that of the state. The majority opinion sustained DMV's rule on the theory that a customized registration plate conveys communication by the state, not the vehicle owner. *Higgins*, 170 Or App at 547. Two judges concurred on the theory that, although speech by both the state or the vehicle owner occurs

at three different stages of the application process, the restraint involved here applied to the stage that involved speech only by the DMV. *Id.* at 554-55 (Edmonds, J., concurring). Another judge concurred on the theory that, although the license plate characters constituted speech by petitioner, the incompatibility exception to Oregon's free speech doctrine justified DMV's restrictions on petitioner's speech. *Id.* at 561-63 (Wollheim, J., concurring) (discussing incompatibility doctrine). Two judges dissented, expressing the view that Oregon law should permit the state to limit the message that vehicle owners might desire to display on customized registration plates, but that the analysis adopted in this court's decision in *Robertson* precluded that result. *Id.* at 563 (Landau, J., dissenting).

We begin by observing that state law requires DMV to create registration plates, with a distinctive configuration of numerals and letters, to facilitate vehicle identification for law enforcement purposes. The numerals, letters, stickers, and other insignia on a registration plate communicate information about the registration status of the assigned vehicle. DMV creates that communication device by manufacturing and assigning a registration plate to vehicle owners. Vehicle owners in turn communicate their vehicles' registration status to the world by affixing the registration plate to the exterior of their vehicle as required by state law.

The latter point demonstrates that, contrary to the state's argument, the information that a vehicle registration plate conveys is not "government speech," as this court has employed that term in describing legal problems arising from the government's publicity about, and promotion of, its policies. *See Burt v. Blumenauer*, 299 Or 55, 66, 699 P2d 168 (1985) (discussing "the concerns that stretch out to many forms of so called government speech"). The function of a registration plate, at bottom, is vehicle identification, not government advocacy. Government controls completely the manufacture and assignment of registration plates, but the label "government speech" in our view fails to describe accurately the vehicle owner's conduct in displaying the registration plate that the government assigns.

Neither can we agree with petitioner that the act of displaying a registration plate on his vehicle constitutes self-expression within the ambit of Article I, section 8. Rather, that conduct constitutes the compelled public disclosure of the registration status of the vehicle. If petitioner chooses to drive his vehicle on the state's highways, then he must display the registration plate that DMV assigns to his vehicle and no other plate. The government's complete control over the manufacture, assignment, and requirements for display of vehicle registration plates undermines petitioner's claim that displaying a registration plate amounts to his own free speech.

In that regard, petitioner's free speech claim is distinguishable from those analyzed in much of this court's case law regarding Article I, section 8. A few examples will suffice. *Robertson* held that a statute that created and defined the crime of "coercion" reached privileged expression, that no historical exception for the restriction existed, and that the court could not construe the statute so as to avoid its overbreadth. *Robertson*, 293 Or at 436-37.

In *City of Eugene v. Miller*, 318 Or 480, 871 P2d 454 (1994), the court reversed the defendant's conviction under a city ordinance for selling joke books on a city sidewalk. The court, relying on earlier authority, noted that selling is a form of communicative behavior that includes speech, *id.* at 485; that the joke books were expressive material, *id.* at 486; and that the ordinance in question treated vendors of expressive material more restrictively than vendors of other merchandise, *id.* at 491.

In *City of Hillsboro v. Purcell*, 306 Or 547, 761 P2d 510 (1988), this court held unconstitutional a city ordinance that forbade any person to enter private property or to call at residences, without an invitation, for the purpose of selling goods. The court noted that government may not ban speech through either criminal laws or civil prohibitions. *Id.* at 553-54. The court, citing *City of Portland v. Tidyman*, 306 Or 174, 182, 759 P2d 242 (1988), did observe that "even free speech activities 'are not immune from regulations imposed for reasons other than the substance of their particular message,' *Tidyman* * * *. In either case, laws must proscribe harm

rather than expression itself." *Purcell*, 306 Or at 554. The court determined that "[s]elling is a form of communicative behavior that includes speech and may involve goods that are protected expression." *Id.* at 555. The court then held that the ordinance was overbroad because it prohibited "all solicitation for any purpose at any time" and that the court could not confine the ordinance through interpretation to "constitutional confines intended by lawmakers[.]" *Id.* at 556.

Those cases, and others that we have not cited, address the constitutionality of legal restraints on a person's own expressive activity, not, as here, the legally compelled display of a message that government creates for a regulatory purpose unrelated to the suppression of speech. Petitioner seeks, however, to circumvent that distinction by emphasizing that DMV's rules for customized registration plates permit him, for a fee, to compose and request a plate configuration of his own choosing. According to petitioner, those rules permit a type of free speech and, consequently, DMV cannot enforce its restraints on the substance of that free speech without offending Article I, section 8.

We disagree with petitioner, because his premise is incorrect. As we discussed earlier, the compelled display, for regulatory purposes, of a registration plate bearing a government-created identification message is not an act of constitutionally protected speech, writing, or printing by the vehicle owner in any historical or modern sense. DMV's customized registration plate rules permitted petitioner to participate, within defined limitations, in the selection of the numerals and letters that would appear on the registration plate for which he applied. But the limitations in DMV's rule confined the possible combinations of characters from which petitioner could select. The state did not open the process to any combination of letters and numbers that a vehicle owner might request. The state, not petitioner, retained control of the parameters within which petitioner could request characters for his customized registration plates.

In our view, DMV's rules allowing a vehicle owner's limited participation in the selection of characters for a customized registration plate do not alter the essential character of a registration plate. It remains a government-controlled

device that carries a government-approved identification message that vehicle owners must display on their vehicle for regulatory purposes unrelated to the suppression of speech. For that reason, there is no basis under this court's case law to examine, as in *Miller* and *Tidyman*, whether DMV's rules are permissible time, place, and manner regulations of free speech, whether the rules fail, as in *Purcell*, to proscribe harm rather than expression itself, or whether, as discussed in *Robertson*, a well-established historical exception applies to rules governing the display of vehicle registration plates.

DMV's rule identified the parameters within which DMV was prepared to manufacture customized registration plates pursuant to applications that vehicle owners submitted. It is obvious from the rule that DMV was unwilling to manufacture a customized registration plate, as a part of its process for vehicle registration, if the requested characters conveyed a message about alcohol (or drug use, profanity, sexual terms, and the like). We find nothing in the text or history of Article I, section 8, that entitles petitioner to compel DMV to manufacture a customized registration plate that conveys a message that falls outside the scope of the messages that DMV was willing to use in its vehicle regulatory scheme.[5]

---

[5] Petitioner does not argue that DMV is failing to administer its rule in an even-handed manner. For example, petitioner does not complain that DMV refused to approve an application for a registration plate reading "GO DEMS" but had approved a registration plate reading "GO GOP." This court has discussed some of the statutory and constitutional limits that constrain a public body's discretion to engage in political advocacy. *See Burt*, 299 Or at 66-70 (discussing limits applicable to government's advocacy in pursuit of its goals). Petitioner's challenge does not implicate those kinds of limits on the way that government may carry out its business.

Petitioner's arguments also do not raise questions about the government's statutory authority to invite or to limit public participation in its business communications. *See Burt*, 299 Or at 70 (before addressing constitutional premises underlying governmental speech, courts should address first what ordinary laws authorize, require, or forbid). Neither do petitioner's arguments raise issues about attempts by government to enforce parameters for such public participation as a pretext to silence its opponents or to evade other constitutional requirements. *See* Or Const, Art I, § 20 (respecting equal privileges and immunities); Art I, § 26 (respecting right of "inhabitants of the State" to "consult for their common good[,]" and to "[instruct] their Representatives"). Claims raising those issues would require a different legal analysis than that applied in this case.

■    Petitioner also asserts that DMV's substantive restriction on customized registration plate messages violates the First Amendment to the United States Constitution, which provides:

> "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for a redress of grievances."

The Court of Appeals rejected petitioner's argument. It concluded that, under current federal case law, a registration plate is a nonpublic forum and that DMV's rules are permissible restraints on speech in that context because they "are reasonable in light of the purposes of the forum and are viewpoint neutral." *Higgins*, 170 Or App at 553 (citing *Arkansas Ed. Television Comm'n v. Forbes*, 523 US 666, 118 S Ct 1633, 140 L Ed 2d 875 (1998)). We conclude that the First Amendment analysis that the Court of Appeals applied was correct. Accordingly, we reject petitioner's First Amendment challenge to DMV's rule.

The decision of the Court of Appeals and the order of the Driver and Motor Vehicle Services Branch are affirmed.