FILED: March 11, 2004


IN THE SUPREME COURT OF THE STATE OF OREGON

STATE OF OREGON,

Respondent on Review,


v.


JASON LEE AUSMUS,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


CHRISTOPHER PECK ANDREWS,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


WARREN B. COX,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v. 


MARIA ESTELA GONZALEZ,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v. 


MASHAUN ALLEN HORNE,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


LEAH HART-LANDSBERG,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


CHARLES WILMER JOHNSON,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


AARON WILLIAM MILLER,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v. 


KRISTEN EARLEEN SAGE,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


DANA DeMASTER,

Petitioner on Review.


STATE OF OREGON,

Respondent on Review,


v.


MELISSA WADE ROHS,

Petitioner on Review.


(CC Nos. 9901-40130, 9812-51296, 9901-40371, 9901-40129,
9901-40128, 9901-40231, 9905-13654, 9901-40232,
9901-40126, 9812-51298, 9901-40234; CA A107691 (Control),
A107692, A107693, A107694, A107695,
A107696, A107697, A107698, A107699,
A107700, A107701; SC S49207 (Control), S49364)


On review from the Court of Appeals.*


Argued and submitted March 5, 2003.


Hugh Sage, Portland, argued the cause and filed the briefs for petitioner on review Sage. With him on the brief on the
merits was Timothy M. Bowman. Andrew S. Chilton, Portland,
argued the cause and filed the briefs for petitioners on review
Cox, DeMaster, Gonzalez, Hart-Landsberg, Johnson, Miller, and
Rohs. With him on the brief on the merits were Lisa J. Ludwig,
Steven J. Sherlag, Timothy M. Bowman, Paul T. Loney, A. Alexander
Hamalain, Stuart A. Sugarman, and Lake James H. Perriguey.


No appearance for petitioners on review Ausmus, Andrews, and Horne.


Erika L. Hadlock, Assistant Attorney General, Salem, argued
the cause and filed the brief for respondent on review. With her
on the brief were Hardy Myers, Attorney General, and Mary H.
Williams, Solicitor General.


Alia S. Miles and Jonathan A. Ater of Ater Wynne LLP,
Portland, and Les Swanson, Portland, filed a brief on behalf of
amicus curiae ACLU Foundation of Oregon, Inc. 


Before, Carson, Chief Justice, and Gillette, Durham, Riggs,
De Muniz, and Balmer, Justices.**


DE MUNIZ, J.


The decision of the Court of Appeals is reversed. The
judgments of the circuit court are affirmed.



*Appeals from Multnomah County Circuit Court, Michael H. Marcus, Judge. 178 Or App 321, 37 P3d 1024 (2001).


**Kistler, J., did not participate in the consideration or decision of this case.


DE MUNIZ, J.

The issue in each of these cases, which were
consolidated on appeal and on review, concerns the facial
constitutionality of one variation of the crime labeled in ORS
166.025(1)(e) as disorderly conduct. ORS 166.025(1)(e) provides, in part:


"A person commits the crime of disorderly conduct
if, with intent to cause public inconvenience,
annoyance or alarm, or recklessly creating a risk
thereof, the person:


"* * * * *


"(e) Congregates with other persons in a public
place and refuses to comply with a lawful order of the
police to disperse[.]"


Each defendant demurred to an accusatory instrument
that charged that defendant with violating the foregoing statute. 
Each defendant raised, among other things, two types of facial
constitutional challenges to the statute, arguing that (1) the
statute was unconstitutionally overbroad, in that it criminalized
forms of expression, speech, and peaceable assembly protected
under Article I, sections 8 and 26, of the Oregon
Constitution (1) and the First Amendment to the United States
Constitution; (2) and (2) the statute was unconstitutionally
vague under Article I, sections 20 and 21, of the Oregon
Constitution (3) and the Due Process Clause of the Fourteenth
Amendment to the United States Constitution. (4) The trial
court sustained defendants' demurrers, concluding that ORS
166.025(1)(e) was unconstitutionally vague under the Oregon
Constitution. The state appealed, and the Court of Appeals
reversed and remanded to the trial court. State v. Ausmus, 178
Or App 321, 37 P3d 1024 (2001). We allowed review and now
reverse the decision of the Court of Appeals and affirm the
judgments of the trial court.

In this court, defendants, joined by amicus curiae
American Civil Liberties Union Foundation of Oregon, Inc., again
challenge the constitutionality of ORS 166.025(1)(e) on the
grounds that that statute is both overbroad and vague in
violation of the state and federal constitutions. (5) Because
we cannot address those constitutional challenges until we first
discern the conduct that ORS 166.025(1)(e) proscribes, we begin
our analysis by construing that statute, beginning with its text
and context. See State v. Chakerian, 325 Or 370, 376-80, 938 P2d
756 (1997) (construing statute before addressing similar facial
constitutional challenges); PGE v. Bureau of Labor and
Industries, 317 Or 606, 610-12, 859 P2d 1143 (1993) (setting out
statutory construction methodology). In doing so, we give words
of common usage "their plain, natural and ordinary meaning." Id.
at 611. We also consider, at the first level of analysis, any
prior case law from this court interpreting the statute at issue. 
State v. Toevs, 327 Or 525, 532, 964 P2d 1007 (1998). If the
legislature's intent is clear from that analysis, then our
inquiry ends. PGE, 317 Or at 611.

Under ORS 166.025(1)(e), a person commits one variation
of the crime of disorderly conduct when the person: (1) with the
intent to cause, or by recklessly creating a risk of causing,
public inconvenience, annoyance, or alarm; (2) congregates with
other persons in a public place; and (3) refuses to comply with a
lawful order of the police to disperse. The parties agree, as do
we, that the element of "[c]ongregates with other persons in a
public place" under ORS 166.025(1)(e) describes conduct
encompassed within the meaning of the phrase "assembling
together" under Article I, section 26, and the word "assemble"
under the First Amendment. See __ Or at __ nn 1, 2 (slip op at
nn 1, 2) (setting out constitutional provisions). The parties,
however, disagree as to the meaning of the other two elements of
the crime -- specifically, the statutory culpable mental state
and the meaning of the term "lawful order" contained within the
phrase "refuses to comply with a lawful order of the police to
disperse." We address in turn the parties' arguments about the
meaning of each of those statutory elements.

Defendants and the state disagree about both the effect
and the scope of the culpable mental state described in ORS
166.025(1)(e). First, defendants argue that the culpable mental
state under ORS 166.025(1)(e) operates to prohibit a congregation
of people that intentionally causes, or recklessly creates a risk
of causing, public inconvenience, annoyance, or alarm. As we
understand the premise of that argument, defendants view the
culpable mental state under ORS 166.025(1)(e) -- that is, an
"intent to cause public inconvenience, annoyance or alarm, or
recklessly creating a risk thereof" -- as effectively proscribing
any congregation from which a factfinder may infer an intent to
cause, or a reckless creation of a risk of causing, the type of
harm described under that statutory phrase. See generally
Delgado v. Souders, 334 Or 122, 135, 137, 46 P3d 729 (2002)
(element of culpable mental state may be established by
circumstantial evidence and reasonable inferences arising from
such evidence, including evidence of particular conduct). As we
explain below, that premise is incorrect, because it ignores the
part of the statutory definition of the crime that requires a
person also to "refuse to comply with a lawful order of the
police to disperse."

This court previously has explained that the statutory phrase "intent to cause public inconvenience, annoyance or alarm,
or recklessly creating a risk thereof," does not describe a harm,
or a risk of a harm, that ORS 166.025(1) prohibits. See State v.
Spencer, 289 Or 225, 229, 611 P2d 1147 (1980) (explaining that
public inconvenience, annoyance, or alarm is not prohibited harm
under ORS 166.025(1)). Instead, that phrase describes the
culpable mental state that the state must prove that a defendant
possessed when the defendant engaged in the conduct that the
statute proscribes under each variation of the crime of
disorderly conduct. (6) Id. Under paragraph (e) of ORS
166.025(1), the paragraph challenged here, that proscribed
conduct is both the congregation with others in a public place
and the refusal to obey a lawful order of the police to disperse. 
Stated differently, a person who congregates with others in a
public place with the intent to cause, or by recklessly creating
a risk of causing, public inconvenience, annoyance, or alarm
violates ORS 166.025(1)(e) only if that person also refuses to
obey a lawful police order to disperse with that same mental
state. Thus, contrary to defendants' argument, the statutory
culpable mental state does not purport to criminalize only the
act of congregating with others with the intent to cause the
statutorily described circumstances.

Defendants and the state also make arguments that
suggest that their views differ respecting the effect of the
culpable mental state that ORS 166.025(1)(e) requires. 
Defendants posit that ORS 166.025(1)(e) would withstand their
constitutional challenges if the culpable mental state under that
statute required the state to prove that, by engaging in the
proscribed conduct, the defendant intended only to cause public
inconvenience, annoyance, or alarm -- or, in other words, that
the defendant lacked any intent to exercise a constitutionally
protected right, such as the right to free expression or speech,
or peaceable assembly. The state, however, asserts that, even if
a defendant intended to exercise a constitutionally protected
right, a defendant also may possess the requisite statutory
mental state if he or she intended to cause, or recklessly
created a risk of causing, one of the statutorily described
circumstances. (7)

Whether the culpable mental state under ORS
166.025(1)(e) requires proof of a defendant's sole intent is a
question of statutory interpretation. Because ORS 166.025(1)(e)
is a criminal statute, the statutory definitions of the culpable
mental states of "with intent" and "recklessly" provided under
ORS 161.085 apply. See ORS 161.085 (providing definitions for
culpable mental states under Oregon Criminal Code of 1971 unless
context requires otherwise). That statute defines those terms as
follows:

"(7) 'Intentionally' or 'with intent,' when used
with respect to a result or to conduct described by a
statute defining an offense, means that a person acts
with a conscious objective to cause the result or to
engage in the conduct so described.


"* * * * *


"(9) 'Recklessly,' when used with respect to a
result or to a circumstance described by a statute
defining an offense, means that a person is aware of
and consciously disregards a substantial and
unjustifiable risk that the result will occur or that
the circumstance exists. The risk must be of such
nature and degree that disregard thereof constitutes a
gross deviation from the standard of care that a
reasonable person would observe in the situation."


Applying those statutory definitions to ORS
166.025(1)(e), we conclude that ORS 166.025(1)(e) requires that a
defendant act with the conscious objective to cause ("with
intent"), or with the awareness and conscious disregard of the
substantial and unjustified risk of causing ("recklessly creating
a risk thereof"), a public inconvenience, annoyance, or alarm. 
Further, nothing in the text of the statute suggests that a
defendant who possesses dual intentions -- that is, to cause
public inconvenience, annoyance, or alarm and to exercise a
constitutionally protected right -- is exempt from the purview of
the statute. Thus, a defendant may intend to exercise a
constitutionally protected right -- such as the right to free
expression or speech, or peaceable assembly -- and nevertheless
may possess the mental state proscribed under ORS 166.025(1)(e).

Having clarified the effect and scope of the culpable mental state under ORS 166.025(1)(e), we next consider
the meaning of the term "lawful order" in the statutory phrase
"refuses to comply with a lawful order of the police to
disperse." Amicus (8) contends that the term "lawful order"
means any order that a duly appointed and authorized police
officer issues and that that term encompasses an order to
disperse issued for any reason whatsoever. By contrast, the
state argues that the term "lawful order" refers to only an order
that a duly appointed and authorized police officer issues that
also is supported by -- and is not in violation of -- substantive
law, including the state and federal constitutions. Stated
differently, the state asserts that an order to disperse is a
"lawful order" under ORS 166.025(1)(e) only if it does not
infringe on a person's exercise of constitutionally protected
rights, such as the right to free expression or speech and the
right to peaceable assembly.

The term "lawful order" is not statutorily defined. 
The dictionary defines the word "lawful," in part, as
"conformable to law : allowed or permitted by law : enforceable
in a court of law * * *." Webster's Third New Int'l Dictionary
1279 (unabridged ed 1993). We conclude that the legislature
intended that dictionary definition to serve as the meaning of
the word "lawful" in ORS 166.025(1)(e) for two reasons. First,
the dictionary definition is the natural and ordinary meaning of
the word "lawful." As noted, under PGE, 317 Or at 611, this
court generally gives words of common usage their plain, natural,
and ordinary meaning. Second, amicus's proffered definition --
that is, that "lawful order" encompasses any order that a duly
appointed and authorized police officer issues -- necessarily
would include police orders that, at the time that they are
issued, are contrary to substantive law. Such a reading divests
the word "lawful" of much, if not all, of its substantive
meaning. Cf. ORS 174.010 (if possible, court shall construe
statute so as to give effect to all words contained therein).

In sum, we conclude that a person violates ORS
166.025(1)(e) if, with the conscious objective to cause, or with
the awareness and conscious disregard of the substantial and
unjustified risk of causing, public inconvenience, annoyance, or
alarm, that person (1) congregates with others in a public place;
and (2) refuses to comply with an order to disperse that a police
officer issues and that is authorized by, and is not contrary to,
substantive law. Having construed ORS 166.025(1)(e) to discern
the legislature's intent, we now turn to defendants' facial
constitutional challenges. 

As noted above, defendants first challenge ORS
166.025(1)(e) on the ground that that statute is overbroad in
violation of Article I, sections 8 and 26, of the Oregon
Constitution and the First Amendment to the United States
Constitution. Specifically, defendants contend that the statute
does not preclude its application to persons permissibly
exercising their rights to free expression under Article I,
section 8, their rights to congregate in peaceable assembly under
Article I, section 26, and their rights to free speech and
peaceable assembly under the First Amendment. 

A statute is unconstitutionally overbroad if it
purports to prohibit conduct that is constitutionally protected. 
State v. Robertson, 293 Or 402, 410, 649 P2d 569 (1982). As this
court explained in Robertson, a claim of overbreadth often can be
resolved by interpreting the statute at issue; that is, in
construing the statute, the court may conclude that the
legislature did not intend its terms to operate with the breadth
for which the challengers contend. Id.

As noted above, in interpreting ORS 166.025(1)(e), we
have concluded that the statutory element "[c]ongregates with
other persons" describes constitutionally protected conduct, and
we further have concluded that the statutory culpable mental
state does not preclude the application of ORS 166.025(1)(e) when
a person intends to exercise constitutionally protected rights. 

The state contends, however, that the term "lawful
order" confines the application of ORS 166.025(1)(e) to
circumstances in which its application does not infringe on
constitutionally protected conduct. In other words, according to
the state, police orders that infringe on rights protected under
Article I, sections 8 and 26, and the First Amendment are not
encompassed within the scope of the statute unless some attending
circumstance –- the commission of an assault, for example –-
rendered them constitutionally permissible. As we explain below,
we do not agree with the state's assertion that the term "lawful
order" confines the statute's application to conduct not
otherwise protected by Article I, sections 8 and 26, of the
Oregon Constitution.

The state is correct that the protection of speech and
assembly under the Oregon Constitution is not absolute. The
state argues, for example, that police lawfully may order a group
of people to disperse when (1) they are engaged in criminal
activity, see, e.g., ORS 133.310(1) (authorizing police officers
to make warrantless arrests when crimes committed in their
presence or when probable cause exists to believe that particular
person committed crime); (2) they create a threat of imminent
serious physical injury, see, e.g., ORS 163.190 (menacing
statute); State v. Garcias, 296 Or 688, 697, 679 P2d 1354 (1984)
(explaining that state may forbid placing another person in fear
of imminent serious physical injury, unless conduct privileged);
(3) they themselves are in danger, see ORS 133.033 (describing
community caretaking function of police officers); and (4) they
are a threat to the integrity of a criminal investigation, see,
e.g., ORS 162.247(1)(a), (2) (interference with lawful duties of
police officer is misdemeanor).

We agree that the statutes set out above, as well as
others, provide the police with lawful authority to arrest a
person engaging in the behavior prohibited by those statutes. 
Similarly, those statutes provide the police with authority to
order a crowd of people engaging in the conduct prohibited by
those statutes to cease that conduct and to disperse. The
elements of ORS 166.025(1)(e), however, reach beyond the activity
or conduct that gave rise to the police order to disperse, and
criminalize conduct that is in response to the order to disperse. 
In other words, ORS 166.025(1)(e) proscribes conduct
(congregating with others in a public place) that occurs after
the order to disperse and that may be separate and apart from the
conduct that might have given rise to the order to disperse. It
is the range of the conduct that the statute criminalizes that
must be tested against the constitutional rights of assembly and
speech.

An individual refusing to comply with a lawful police
order to disperse may react in a variety of ways. For example,
an individual may continue the prohibited behavior (e.g.,
fighting) that gave rise to the police order to disperse. In
that case, the police could arrest the individual for engaging in
that behavior and, assuming that the individual is congregating
with others with the requisite mental state, could arrest the
individual for disorderly conduct under paragraph (e) of ORS
166.025(1). 

However, an individual may respond to an order to
disperse, simply by ceasing the behavior that gave rise to the
order to disperse, while continuing to congregate peaceably with
others with one of the mental states proscribed by the statute. 
As we previously have noted, a person intending to exercise a
constitutionally protected right such as peaceable assembly or
expression coincidently may possess an intent to cause public
inconvenience, annoyance, or alarm. In fact, individuals often
undertake the exercise of protected rights such as assembly or
expression with the intent of causing public inconvenience,
annoyance, or alarm to those, such as government leaders, who are
exposed to the assembly or expression. 

The difficulty with ORS 166.025(1)(e), is that, a
person ordered to disperse violates ORS 166.025(1)(e) regardless
of whether or not any harm results from the refusal to disperse,
the continued congregation with others, or the proscribed mental
state. Thus, the statute applies to an individual who, in
response to an order to disperse, abandons whatever activity in
which they were engaged that made the order lawful in the first
place, but continues peaceably to congregate with others, with
the intent to cause public inconvenience, annoyance, or alarm or
recklessly creates the risk of causing public inconvenience,
annoyance or alarm. And, because ORS 166.025(1)(e) reaches that
conduct, the legislature has stepped beyond the permissible
regulation of damaging conduct or the harmful effects that may
result from assembly or speech. See, e.g., Spencer, 289 Or 225
(holding variant of former disorderly conduct unconstitutional as
direct restraint on speech rather than regulation or prevention
of specified harm). 

The foregoing construction of the statute's scope
appears inescapable. There is nothing in the description of the
elements of the statute that would permit this court faithfully
to narrow the application of the statute to only conduct that the
constitution does not protect. See, e.g., Robertson, 293 Or at
434-36 (examining whether statute is overbroad because it reaches
areas of constitutionally privileged expression and whether
narrowing construction possible to save state from
unconstitutional overbreadth); City of Hillsboro v. Purcell, 306
Or 547, 555-56, 761 P2d 510 (1988) (same). Simply put,
congregating with others in a manner that does not cause harm,
even when coupled with one of the mental states proscribed in the
statute, is conduct that Article I, sections 8 and 26, protects. 

The legislature has authorized the police through a
multitude of statutes, a number of which we have described above, 
to prevent and regulate harmful effects that may result from
expression or assembly. However, the variant of disorderly
conduct that paragraph (e) of ORS 166.025(1) defines includes
conduct and thought that does not produce a harmful effect. 
Article I, sections 8 and 26, protect individuals from that form
of governmental restraint.

We conclude that, on its face, ORS 166.025(1)(e) is
unconstitutionally overbroad because it restrains conduct that
Article I, sections 8 and 26, of the Oregon Constitution
protects. The trial court correctly sustained defendants'
demurrers.

The decision of the Court of Appeals is reversed. The
judgments of the circuit court are affirmed.





1. Article I, section 8, of the Oregon Constitution
provides:

"No law shall be passed restraining the free
expression of opinion, or restricting the right to
speak, write, or print freely on any subject whatever;
but every person shall be responsible for the abuse of
this right."

Article I, section 26, of the Oregon Constitution provides, in
part:

"No law shall be passed restraining any of the
inhabitants of the State from assembling together in a
peaceable manner to consult for their common good[.]"


Return to previous location.



2. The First Amendment to the United States
Constitution provides, in part:

"Congress shall make no law * * * abridging the
freedom of speech * * * or the right of the people
peaceably to assemble * * *."


Return to previous location.



3. Article I, section 20, of the Oregon
Constitution provides:

"No law shall be passed granting to any citizen or
class of citizens privileges, or immunities, which,
upon the same terms, shall not equally belong to all
citizens."

Article I, section 21, of the Oregon Constitution
provides, in part:

"No ex-post facto law * * * shall ever be passed 
* * *."

Return to previous location.



4. The Fourteenth Amendment to the United States
Constitution provides, in part:

"No State shall * * * deprive any person of life,
liberty, or property, without due process of law[.]"


Return to previous location.



5. We note that, although all defendants
challenge ORS 166.025(1)(e) on the same constitutional
grounds, the particularities of their arguments differ
in some respects. For ease of reading, we refer to
defendants collectively as "defendants" throughout this
opinion and do not distinguish their specific
arguments.

Return to previous location.



6. ORS 166.025(1) provides in its entirety:

"(1) A person commits the crime of
disorderly conduct if, with intent to cause
public inconvenience, annoyance or alarm, or
recklessly creating a risk thereof, the
person:

"(a) Engages in fighting or in violent,
tumultuous or threatening behavior;


"(b) Makes unreasonable noise;

"(c) Disturbs any lawful assembly of
persons without lawful authority;

"(d) Obstructs vehicular or pedestrian
traffic on a public way;

"(e) Congregates with other persons in a
public place and refuses to comply with a
lawful order of the police to disperse;

"(f) Initiates or circulates a report,
knowing it to be false, concerning an alleged
or impending fire, explosion, crime,
catastrophe or other emergency; or

"(g) Creates a hazardous or physically
offensive condition by any act which the
person is not licensed or privileged to do."


(Emphasis added.) As can be seen from its text, ORS
166.025(1) does not define any variation of disorderly
conduct by describing a prohibited harm. Instead, in
each paragraph under ORS 166.025(1), the statute
describes conduct that, if performed with the requisite
mental state, constitutes disorderly conduct.

Return to previous location.



7. The parties draw their arguments, in large
part, from the United States Supreme Court's decision
in Colten v. Kentucky, 407 US 104, 92 S Ct 1953, 32 L
Ed 2d 584 (1972). In that case, the Court relied on a
state appellate court construction of a state statute
virtually identical to ORS 166.025(1)(e), wherein the
state appellate court had concluded that the statute
applied only when a defendant possessed a "predominant"
intent to cause, or recklessly created a risk of
causing, the statutorily described harms. As can be
seen in the text that follows, we do not construe ORS
166.025(1)(e) in the same manner as that upon which the
Court in Colten relied.

Return to previous location.



8. Defendants do not challenge the state's
proffered interpretation of the term "lawful order"
under ORS 166.025(1)(e); instead, they argue that, even
if the state's interpretation of that term is correct,
the statute nevertheless is unconstitutionally
overbroad and vague in violation of the state and
federal constitutions. 

Return to previous location.